STATE of Utah, Plaintiff and Appellee,

v.

James Douglas TYLER, Defendant and Appellant.

No. 910118.

Supreme Court of Utah.

March 31, 1993.

R. Paul Van Dam, Atty. Gen., Kevin J. Murphy, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Manny C. Garcia, Salt Lake City, for defendant and appellant.

HALL, Chief Justice:

Defendant James Douglas Tyler appeals his conviction for aggravated arson, a first degree felony in violation of Utah Code Ann. § 76–6–103. Tyler brings this appeal, claiming ineffective assistance of counsel in violation of his constitutional right to counsel.[1] We affirm.

We recite the facts in a light most favorable to the jury verdict.[2] On the evening of July 1, 1990, Tyler went to the apartment of his ex-wife, Katherine Tyler (hereinafter "Ms. Tyler"). According to Ms. Tyler's testimony at trial, Tyler was drunk and abusive. They began to argue, and

Ms. Tyler hit Tyler with a baseball bat. Ms. Tyler testified that Tyler told her, "You'll pay, I'll kill your dog, and I'll burn your house." He then left to buy some beer.

Ms. Tyler went to her neighbor's apartment and called the police. Before the police arrived, Ms. Tyler saw Tyler return and walk down an alley toward her apartment. The police arrived, responding to what Officer Richard Walton testified to, as reported by dispatch, an "unwanted guest situation." Walton accompanied Ms. Tyler back to her apartment. As Walton and Ms. Tyler approached the apartment, they saw Tyler emerge from the alley near the apartment and walk hurriedly down the street. Walton radioed a nearby officer to stop Tyler for questioning. In the meantime, Ms. Tyler entered her apartment and found a fire in the kitchen. Walton radioed the fire department. Fire fighters soon arrived and extinguished the fire.

Upon investigation, the fire department investigator determined that the fire had originated from two places, one behind and one on top of the refrigerator. He also concluded that the fire had not been the result of an accident. He believed that some type of accelerant[3] had been used to start the fire at the base of the refrigerator and that some other material had been ignited atop the refrigerator. At trial, the investigator opined that the fire had been "intentionally set" by "hand-held flame."

When apprehended, Tyler told the officers that he had just been walking around in the area and that he had not been inside Ms. Tyler's apartment. At that time, he had in his possession Ms. Tyler's work identification tag and a set of keys to her home and car. Ms. Tyler testified that she had left these items in her apartment that day.

Tyler was arrested and charged with aggravated arson. During the proceedings,

---

1. See U.S. Const. amend. VI; Utah Const. art. I, § 12.

2. State v. Johnson, 821 P.2d 1150, 1153 (Utah 1991).

3. Physical evidence seized by the fire department during the investigation included a can of paint thinner.

he was represented by three separate attorneys. Nine days after his arrest, Nancy Bergeson entered an appearance as Tyler's counsel and made a request for discovery. During Bergeson's tenure as his attorney, she met with him on one occasion and had another individual interview him on a later date. Thereafter, she withdrew as counsel due to a conflict of interest between Tyler and a member of her office.

At the preliminary hearing,[4] Tyler was represented by Kenneth Brown. Tyler had not met with Brown prior to the hearing. At the hearing, Tyler testified in his defense, against Brown's advice, that he did not start the fire and that he thought that the fire stemmed from two water heaters in Ms. Tyler's apartment. The prosecution rebutted his testimony with that of the fire department investigator, who stated that in his opinion the fire did not originate from the water heaters. Tyler was bound over for trial.

After the preliminary hearing, Tyler fired Brown and was represented at his arraignment by Stephen McCaughey.[5] Tyler had not met with McCaughey prior to the arraignment. At a hearing the day before the trial was scheduled to begin, McCaughey moved for and was granted a forty-day continuance.[6] Also, at McCaughey's request, the trial court authorized McCaughey to employ the services of a special investigator to assist in the preparation of Tyler's defense.

The trial took place on November 28 and 29, 1990, at which time the defense presented evidence showing several inconsistencies and differences in the evidence presented by the prosecution. Tyler's testimony of the events surrounding the fire varied significantly from the version provided by Ms.

Tyler. Tyler claimed that when he arrived, Ms. Tyler was asleep on the couch, intoxicated. Consistent with Ms. Tyler's testimony, Tyler claimed that they began to argue and Ms. Tyler hit him with a baseball bat. He denied, however, that he threatened to "kill [her] dog" or "burn [her] house." He testified that he left to buy a beer and that he returned and, while in her apartment, he could smell the paint and paint thinner that were on the kitchen table. He then claimed that he was sitting in the backyard when he heard a loud "boom." When he looked up, smoke was coming out of the back door. According to his testimony, he attempted to use the neighbors' telephone to report the fire but the neighbors were not home. He then left to use a pay phone and was stopped by the police officer. Tyler claimed that he had his ex-wife's car keys because he had been working on her car earlier and that he had her identification card because he had been going through some papers when it dropped out and he inadvertently put it in his pocket.

Attacking Ms. Tyler's credibility, the defense brought out that she could not remember how long she and Tyler had been divorced and that on several occasions previous to the fire, she had phoned the police to complain about Tyler. There was also a discrepancy between the number of calls she claimed to have made to the police the day of the fire and the number the police had on record. In addition, Ms. Tyler's neighbor testified for the defense that Ms. Tyler had been visiting with her since returning from work and that Ms. Tyler had called the police to report the fire, not to complain about Tyler. The defense also pointed out that Tyler's fingerprints were not found on the can of paint thinner.

Notwithstanding the inconsistencies between Tyler's and Ms. Tyler's testimonies,

---

**4.** Because Tyler was not represented by counsel at the time of the originally scheduled preliminary hearing, that hearing was postponed from August 2 to August 16, 1990.

**5.** McCaughey was appointed counsel for Tyler on September 10, the date originally set for the arraignment. As a result, Tyler's arraignment was postponed to September 17, 1990.

**6.** McCaughey asked for the continuance to have an expert further investigate the findings of the previous fire investigation. Trial was originally set for October 18 and, upon Tyler's waiver of a "speedy" trial, was reset for November 28, 1990.

the jury returned a verdict against Tyler, finding him guilty of aggravated arson. Tyler moved for a new trial, claiming ineffective assistance of counsel. The motion was denied, and he was sentenced to an indeterminate term of five years to life at the Utah State Prison.

Tyler appeals, arguing that he was denied his constitutional right to effective assistance of counsel. He contends that all three counsel failed to represent him effectively. Specifically, he claims that he had little contact with counsel during the proceedings and that they did not proceed in a timely manner. He further contends that sufficient evidence was not presented at trial to dispute the State's case.

The sole issue to be decided is whether Tyler received ineffective assistance of counsel, thus denying him his constitutional right to counsel. Tyler does not make any assertion that he was denied effective assistance of counsel under the Utah Constitution or that the guarantees to counsel under the Utah Constitution are any different from those provided for in the United States Constitution. We therefore pursue a resolution of the issue under the federal constitution.[7]

■ In *Strickland v. Washington*,[8] the United States Supreme Court established the standard of review for ineffective assistance of counsel claims.[9] "[I]neffective as-

sistance of counsel claims present a mixed question of fact and law."[10] "Therefore, ... where the trial court has previously heard a motion based on ineffective assistance of counsel, reviewing courts are free to make an independent determination of a trial court's conclusions."[11] However, the trial court's factual findings shall not be set aside on appeal unless clearly erroneous.[12]

The Sixth Amendment to the United States Constitution provides in part, "In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of counsel for his defence."[13] A defendant's Sixth Amendment right to counsel has been held to be " 'the right to effective assistance of counsel.' "[14] In determining whether a criminal defendant has been denied his Sixth Amendment guarantee to effective counsel, this court has consistently followed *Strickland*.[15] The Court in *Strickland* established a two-part test for determining the existence of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

7. *See State v. Templin*, 805 P.2d 182, 185 (Utah 1990); *State v. Verde*, 770 P.2d 116, 118 n. 1 (Utah 1989); *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988).

8. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

9. *Id.* at 698, 104 S.Ct. at 2070.

10. *Templin*, 805 P.2d at 186 (citing *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070).

11. *Id.; see also Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.1988), *cert. denied*, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989); *State v. Crestani*, 771 P.2d 1085, 1089 (Utah Ct.App.1989).

12. *Templin*, 805 P.2d at 186.

13. U.S. Const. amend. VI.

14. *Templin*, 805 P.2d at 186 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)); *see also State v. McNicol*, 554 P.2d 203, 204 (Utah 1976).

15. *See supra* note 8. For Utah cases that follow *Strickland*, see, for example, *State v. Gardner*, 844 P.2d 293, 297 (Utah 1992); *Templin*, 805 P.2d at 185–88; *State v. Bullock*, 791 P.2d 155, 159–160 & n. 17 (Utah 1989), *cert. denied*, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990); *State v. Carter*, 776 P.2d 886, 893–94 (Utah 1989); *Verde*, 770 P.2d at 118–20 & n. 2, 124 & n. 15; *State v. Speer*, 750 P.2d 186, 191–92 (Utah 1988); *State v. Frame*, 723 P.2d 401, 405 (Utah 1986).

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[16]

To prevail on a claim of ineffective assistance of counsel, a "defendant has the burden of meeting *both* parts of this test." [17]

Tyler claims that he did not receive "meaningful advice and assistance" from counsel throughout the critical stages of the proceedings and that an insufficient defense was presented at trial such that the cumulative effort of counsel was deficient. Specifically, he contends that his first counsel, Bergeson, "did nothing" while more than a month passed. Tyler argues that Bergeson was deficient because she did not order an "immediate investigation" of the fire scene and, despite the fact that she met with him personally, had him interviewed by an investigator, and requested information from the prosecution, her efforts amounted to an actual denial of counsel. Tyler asserts that this was the most crucial phase of his representation, a time where Bergeson "barely functioned" as legal counsel.

Tyler claims that his second counsel, Brown, also failed to investigate the fire and that he was ill-prepared when he represented Tyler at the August 16 preliminary hearing. This, according to Tyler, constituted constructive denial of counsel. Finally, Tyler claims that when McCaughey (his third counsel) was assigned the case, the investigation he initiated was "fruitless" because the fire scene had since been cleaned up and crucial evidence had been lost due to the delay. Additionally, Tyler claims that at trial, McCaughey offered an insufficient defense inasmuch as he failed to call an expert to rebut the State's expert and to present certain evidence to impeach testimony presented by the State.

Despite the fact that Tyler was represented by three separate counsel from the time of his arrest to his conviction, we treat it as one representation for purposes of determining whether counsels' performance was deficient. We do, however, assess the performance of all three at different stages of their representation.

■ The burden of establishing counsels' ineffectiveness rests with Tyler.[18] To meet the first part of the *Strickland* test, a defendant must " 'identify the acts or omissions' which, under the circumstances, 'show that counsel's representation fell below an objective standard of reasonableness.' " [19] *Strickland* recognized that due to " 'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how to best represent a criminal defendant,' " [20] there is a strong presumption that counsel's performance was " 'within the wide range of reasonable professional assistance.' " [21] Finally, proof of counsel's ineffectiveness must be a demonstrable reality, not mere speculation.[22]

■ While Tyler makes several claims that counsels' performance was deficient, he cites no authority to support his claims, nor does he provide a standard by which to judge the deficiency. By virtue of this alone, Tyler has failed to meet the burden imparted by *Strickland* of overcoming the presumption that counsel performed in a professionally reasonable manner. We choose, however, to pursue the merits of Tyler's claims under a *Strickland* analysis.

■ The major focus of Tyler's contentions centers around counsels' omission of

---

**16.** *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

**17.** *Templin,* 805 P.2d at 186 (emphasis added) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

**18.** *McNicol,* 554 P.2d at 204.

**19.** *Templin,* 805 P.2d at 186 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065); *see also Gardner,* 844 P.2d at 297.

**20.** *Templin,* 805 P.2d at 186 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

**21.** *Id.*

**22.** *Frame,* 723 P.2d at 405; *State v. Buel,* 700 P.2d 701, 703 (Utah 1985).

an immediate and adequate investigation of the fire scene. Consistent with *Strickland*, in *State v. Templin* we concluded that if defense counsel fails to adequately investigate the underlying facts of a case, counsel's performance cannot be viewed as reasonable.[23] However, in the event counsel does not instigate an investigation, he or she has a duty to make "a reasonable decision that makes particular investigations unnecessary."[24] Furthermore, in cases where the issue is whether counsel rendered ineffective assistance, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."[25]

■ In the present case, it is undisputed that when McCaughey was appointed as Tyler's counsel, he ordered an investigation. He retained a special investigator who investigated the fire and assisted in preparing Tyler's defense.[26] It therefore remains at issue whether Bergeson's decision not to initiate an immediate investigation was reasonable such that an investigation was not necessary at the time.[27] Although Bergeson herself neither investigated nor ordered an investigation of the fire, the record shows that upon being appointed counsel for Tyler, she made a discovery request of the prosecution for all reports and investigations concerning the case. The prosecution then provided her with the information available at the time. While

an immediate investigation may have been preferable, counsel's assistance need not be errorless to be judged effective.[28] Because Bergeson presumably obtained the same information as she would have obtained had she performed an independent investigation, we conclude that her conduct was reasonable.

Obviously, had there been no investigation whatsoever, defense counsels' performance would have been deficient.[29] However, in light of the facts that Bergeson made a prompt discovery request of the prosecution, that an investigation was eventually conducted, and that Tyler has failed to show that an earlier investigation would have yielded different results than those obtained by McCaughey, we conclude that counsels' overall conduct with regard to the investigation was reasonable.

Counsels' performance was otherwise reasonable. Claims of ineffective assistance of counsel depend largely on the facts of each case. Therefore, in assessing the reasonableness of representation, we take into account all circumstances surrounding it.[30] Tyler claims that "Bergeson did nothing ... while more than a month passed...." The record shows that Bergeson was appointed counsel for Tyler nine days after his arrest, at which time she made the discovery request referred to above. On July 12, Bergeson met with Tyler. Finally, a nonrecord memoran-

---

23. *Templin*, 805 P.2d at 188; *see also Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

24. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

25. *Id.*

26. The record indicates that the investigator spent 51 hours assisting McCaughey in preparing Tyler's defense. The investigator's time was spent primarily investigating and researching, among other things, information collected by the fire department investigator. The investigator's responsibilities also included locating and interviewing prospective witnesses, subpoenaing records, meeting once with Tyler, and meeting periodically with McCaughey.

27. There is no evidence in the record to suggest that Bergeson decided to entirely forego an investigation. Therefore, because she withdrew as counsel soon after her appointment, it is possible to assess only the decisions she made before her withdrawal, not whether she intended to investigate later.

28. *State v. Smith*, 68 Haw. 304, 712 P.2d 496, 500 (1986).

29. In *Templin*, we stated that "a decision not to investigate cannot be considered a tactical decision." 805 P.2d at 188. Therefore, a decision not to investigate cannot receive the same deference afforded a tactical decision.

30. *See Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065–66.

dum[31] indicates that on July 26, at her request, Tyler was interviewed by a Legal Defender Association investigator, a fact that Tyler acknowledges. It is clear that Tyler's claim that Bergeson "did nothing" not only is unsupported by the record, but also is contradicted.[32] Based on these facts, Tyler's allegation is meritless.

With regard to Tyler's allegations that his second counsel, Brown, was unprepared at the preliminary hearing, we find no merit for a number of reasons. First and foremost, there is no evidence in the record to suggest that he was unprepared. Second, he had only recently been appointed counsel for Tyler.[33] At the preliminary hearing, Brown advised Tyler not to testify on his own behalf, which indicates not only that he had expended some effort thinking about and preparing for the hearing in the short time he had to get ready, but also that he acted as counsel, providing advice based on his professional opinion. In light of all the circumstances, Brown performed reasonably.

 We now turn to Tyler's contentions that McCaughey presented an insufficient defense at trial, primarily by failing to call an expert to dispute the State's experts and by failing to present certain testimony contradictory to the State's. It is well established that trial tactics and strategies including what witnesses to call, what objections to make, and by and large what defenses to put forth are within the prerogative of counsel and are generally left to counsel's professional judgment.[34] Furthermore, counsel's decision to call or not to call an expert witness is a matter of trial strategy, which will not be questioned and viewed as ineffectiveness unless there is no reasonable basis for that decision.[35]

The record reveals that McCaughey introduced testimony through a number of witnesses, including Tyler. Through Tyler's testimony, McCaughey brought out several inconsistencies in the State's version of the events surrounding the fire. In addition, he presented evidence to attack the credibility and reliability of the State's evidence. Such evidence included Ms. Tyler's inability to remember how long she and Tyler had been divorced[36] and, contrary to Ms. Tyler's testimony, that on numerous occasions in the months preceding the fire, Ms. Tyler had called the police complaining about Tyler.[37] It was also pointed out to the jury that the police records showed that Ms. Tyler phoned only once on the day of the fire, while she claims that she called twice. In addition, McCaughey brought out the possibility that Ms. Tyler fabricated evidence that was recovered by the fire investigator some ten days after the fire.[38] Finally, McCaughey

---

31. It is normal practice to disregard nonrecord material. *See State v. Cook,* 714 P.2d 296, 297 (Utah 1986). However, in its brief, the State waived objection to consideration of this memorandum.

32. The record also indicates that Bergeson did not even serve as Tyler's counsel for an entire month. She entered appearance as counsel on July 9 and moved to withdraw on August 3.

33. While it is not clear in the record precisely when he was appointed counsel for Tyler, Brown did not enter appearance as counsel until August 17, a day after the hearing.

34. *State v. Wood,* 648 P.2d 71, 91 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982); *see also State v. Gray,* 601 P.2d 918, 920 (Utah 1979); *State v. Pierren,* 583 P.2d 69, 70 (Utah 1978); *McNicol,* 554 P.2d at 205.

35. *State v. Sammons,* 156 Ariz. 51, 749 P.2d 1372, 1377 (1988).

36. Ms. Tyler testified at trial that she and Tyler had been divorced thirteen years. The divorce decree introduced at trial indicated that they had been divorced approximately seven and one-half years.

37. Ms. Tyler testified that she had called the police to complain about Tyler once or twice from December 1989 to July 1990. McCaughey brought out on cross-examination that during that same time period, she had actually contacted the police six times with various complaints about Tyler.

38. Nine days after the fire, Ms. Tyler asked the fire investigator to come and get items that had the smell of lighter fluid or some flammable liquid on them. Later, State Crime Laboratory tests showed the items to contain hydrocarbons (basic element used to produce any flammable, combustible liquid). The fire investigator testified that Ms. Tyler claimed to have found these

brought out and emphasized again in closing argument that Tyler's fingerprints were not on the can of paint thinner found in Ms. Tyler's apartment, which the State hypothesized could possibly have been the accelerant of the fire. In light of the fact that substantial testimony and evidence were presented in Tyler's defense, we do not attempt to second-guess defense counsel's strategies, but simply conclude that McCaughey performed reasonably at trial.

■ The purpose of requiring effective assistance of counsel is to better ensure that a defendant receives a fair trial.[39] Counsel on several occasions acted in a manner to secure better circumstances for Tyler. Based on a motion by Brown, Tyler's arraignment was continued from September 10 to September 17, 1990, to allow for more preparation time. Additionally, at the hearing that took place the day before the originally scheduled trial, McCaughey sought and was granted a forty-day trial continuance on behalf of Tyler to conduct an investigation and to better prepare for trial due to the short time he had been on the case. The following dialogue took place at the hearing:

> THE COURT: Are you willing to give up your constitutional right to a speedy trial to the extent of November 28?
>
> MR. TYLER: I hate to. I've been here a hundred and nine days.
>
> THE COURT: Your decision. I can go tomorrow, or whatever you want.
>
> MR. TYLER: If that's the only thing we can do. It's been put off, and put off, and put off.
>
> THE COURT: I don't know that it's been put off and put off. I don't agree that it's been put off and put off. I set this matter within thirty days from the time you were arraigned. No equivocation, Mr. Tyler. If you want to go to trial, we'll go tomorrow morning.

> MR. TYLER: What?
>
> THE COURT: If you are unwilling to waive your constitutional rights to a speedy trial, I have no alternative but to try it tomorrow.
>
> MR. TYLER: I don't want to, but I will waive my right to a speedy trial.
>
> THE COURT: To the extent of November 28?
>
> MR. TYLER: If I have to.
>
> THE COURT: You don't have to.
>
> MR. TYLER: To get a fair trial I guess I'm going to have to.
>
> THE COURT: Mr. Tyler, I don't want to screw around with you. Your attorney is trying to represent you in a proper fashion, and he needs to have some experts look at this thing. The State graciously has agreed to this. They don't have to agree to this. And neither do I. I'd like to see you get a fair trial too. And that's my sole purpose here is to see that you get a fair trial, and the State gets a fair trial. But I'm not going to allow you to equivocate on your constitutional rights to a speedy trial. Either you're willing to give it up so that you can have the benefit of this extended period of time. If you aren't willing to do that, then you haven't waived your right to a speedy trial as you are entitled to have under the constitution, and I will try this case tomorrow morning. It's your decision.
>
> MR. TYLER: My decision is to have a fair trial. All the evidence is not in. I'm forced to give up my rights to a long trial forty days from now.
>
> THE COURT: You're not forced to give them up. We can play this word game for the rest of the afternoon. I have other people here that need my attention.
>
> MR. TYLER: I waive my rights to a speedy trial.

items in her bedroom closet. During the investigation on the day of the fire, a sheet was seized from the same bedroom closet, presumably because it smelled of paint thinner. No other items were recovered.

**39.** *See Frame,* 723 P.2d at 405.

The above illustrates not only that counsel was attempting to discharge his duty to provide Tyler with effective assistance, but also that Tyler understood, although begrudgingly, that McCaughey, as well as the court, was intent on taking the necessary steps to ensure a fair trial while upholding Tyler's constitutional rights.

We conclude that counsel not only performed reasonably, but competently as well, in representing Tyler. In sum, Tyler has not shown acts or omissions of counsel that fall below a reasonably professional standard, and therefore he has failed to meet the burden imposed by the first prong of the *Strickland* test.

 Despite the above conclusion, we continue our analysis and address the second prong of the *Strickland* test. The second part of the *Strickland* test requires a showing that a defendant was prejudiced such that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " [40] A reasonable probability is that which is sufficient to undermine the confidence in the reliability of the outcome.[41] Tyler argues under *Strickland* that because counsels' performance amounted to actual and constructive denial of assistance of counsel, prejudice is presumed and therefore the second prong of the *Strickland* test is met.[42] While it is true that in certain contexts, *Strickland* recognized that prejudice is presumed, this

is not one of them.[43] In his brief, Tyler merely labels certain acts of counsel as constituting either actual or constructive denial of assistance, without providing a basis for the assertion. An independent evaluation of counsels' conduct leads us to conclude that counsels' performance falls into neither of these categories. Tyler therefore retains the burden of affirmatively proving prejudice.[44]

Tyler has not affirmatively shown that he was prejudiced by any conduct of counsel. His allegations of prejudice are "wholly speculative" [45] at best and "in no way give rise to the conclusion that 'but for counsel's unprofessional errors, the result [at trial] would have been different.' " [46] A review of counsels' efforts persuades us that even if their performance had been deficient, such deficiency did not result in prejudice to Tyler.

·, CONCLUSION

Although through their concerted efforts counsel did not produce the desired result, "an unfavorable result is not sufficient for and does not give rise to a conclusion of ineffective assistance of counsel." [47] "A defendant is not guaranteed 'successful assistance of counsel,' " [48] and " 'competency of counsel is not measured by the result.' " [49] Moreover, it is not enough that Tyler can show that counsels' performance could have been better or that counsels' performance might have contributed to his

---

**40.** *Templin,* 805 P.2d at 187 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068); *see also Gardner,* 844 P.2d at 297.

**41.** *See Templin,* 805 P.2d at 187 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

**42.** *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

**43.** *Strickland* expressly recognized certain circumstances where prejudice is presumed: when actual or constructive denial of assistance has occurred, when the prosecution interferes with counsel's assistance, and when counsel is burdened by a conflict of interest. *See id.* at 692, 104 S.Ct. at 2067.

**44.** *Id.* at 693, 104 S.Ct. at 2067.

**45.** *State v. Carter,* 776 P.2d 886, 893 (Utah 1989) (citing *Frame,* 723 P.2d at 406).

**46.** *Carter,* 776 P.2d at 893–94 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2068).

**47.** *Buel,* 700 P.2d at 703.

**48.** *State v. Woods,* 34 Wash.App. 750, 665 P.2d 895, 900 (1983) (quoting *State v. White,* 81 Wash.2d 223, 500 P.2d 1242, 1243 (1972)).

**49.** *Id.* (quoting *State v. Wilson,* 29 Wash.App. 895, 626 P.2d 998, 1004 (1981)).

conviction.[50] Tyler's constitutional right entitles him only to effective assistance of counsel, not to the best or most complete representation available.[51] In short, a defendant claiming ineffective assistance of counsel has the difficult burden of showing *actual unreasonable representation and actual prejudice.*[52] While failure to show either element would have been enough to defeat Tyler's claim and uphold his conviction,[53] Tyler has failed to show both that counsels' performance was deficient and that he was prejudiced by such performance. Accordingly, we hold that Tyler was not denied his constitutional right to effective assistance of counsel and affirm the trial court's ruling.

DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice (dissenting).

I dissent. I would dismiss the appeal because the appellate record is insufficient for us to fairly determine whether defendant was denied effective assistance of counsel.

Following the jury's verdict, defendant moved for a new trial on the ground of ineffective assistance of counsel. The trial court denied the motion without a hearing. Defendant has appealed on the assumption that the record on appeal is adequate for us to determine that issue. However, deficiencies in the record leave me unable to make that determination.

For example, defendant contends that his first counsel was deficient in not seeking a prompt independent investigation of the origin and cause of the fire. His third counsel did obtain the appointment of a special investigator, but that was not until three and one-half months after the fire. We do not know to what extent that investigation was hampered by the delay. It does appear that because the fire scene had been cleaned and the damage caused by the fire repaired, the special investigator was limited to reviewing the investigation and report made by the fire department. However, the special investigator has not been deposed or had the opportunity to testify regarding any limitation he worked under. It appears to me that when a defendant contends that a fire originated differently than the fire department investigator has reported, an independent investigation may well be warranted. It is no answer to state, as does the majority, that defendant has not demonstrated that an earlier investigation would have aided him. Of course, defendant cannot show that. No one knows what, if anything, a timely independent investigation might have revealed. Under these circumstances, obtaining the fire department's report, while helpful, may not have been sufficient to protect defendant's interests.

Additionally, the record does not reflect if the first and second counsel interviewed any witnesses other than defendant. At trial there was contradictory testimony whether Ms. Tyler had called the police to report a fire, a disturbance, or both. A tape was made of the call to the police dispatcher that would have clarified that issue, but it was erased before defendant's third attorney subpoenaed it. This was important because Ms. Tyler's neighbor, from whose home she called the police, testified that Ms. Tyler called the police to report a fire. If true, that fact would tend to corroborate defendant's position that Ms. Tyler set the fire and then blamed him.

Finally, there were fingerprints on the can of accelerant that was used, but they were not defendant's prints. No investigation was made to determine whose prints they were.

The paucity of the record leaves too many questions unanswered for me to join

---

50. *Estes v. State,* 111 Idaho 430, 725 P.2d 135, 139 (1986).

51. *People v. District Court of El Paso County,* 761 P.2d 206, 210 (Colo.1988).

52. *Estes,* 725 P.2d at 139.

53. *See Verde,* 770 P.2d at 118–19.

the majority, which largely relies on assumptions made from the lack of evidence. I would dismiss the appeal without prejudice and allow defendant to collaterally attack his conviction under rule 65B, Utah Rules of Civil Procedure. An evidentiary hearing can then be held to determine the adequacy of defendant's representation.

STEWART, J., concurs in the dissenting opinion of HOWE, Associate C.J.