John Albert TAYLOR, aka John Albert
Ippolito, Plaintiff and Appellant,

v.

WARDEN, Defendant and Appellee.

No. 930595.

Supreme Court of Utah.

Oct. 20, 1995.

Edward K. Brass, Salt Lake City, for plaintiff.

Jan Graham, Att'y Gen., Charlene Barlow, Thomas Brunker, Asst. Att'ys Gen., Salt Lake City, for defendant.

DURHAM, Justice:

John Albert Taylor appeals from the denial of his petition for a writ of habeas corpus. We affirm.

In 1989, following a bench trial before Judge David E. Roth, Taylor was convicted of capital homicide and sentenced to death for sexually assaulting eleven-year-old Charla King and strangling her with a telephone cord. Additional facts are set out in our opinion in *State v. Taylor*, 818 P.2d 1030 (Utah 1991), *cert. denied*, 503 U.S. 966, 112 S.Ct. 1576, 118 L.Ed.2d 219 (1992). We affirmed Taylor's conviction on direct appeal. *Id.* Taylor petitioned for extraordinary relief pursuant to rule 65B, Utah Rules of Civil Procedure. Following an evidentiary hearing, the second district court denied the writ, holding that Weber County had provided counsel who met the statutory minimum standard in 1989 for indigent representation, that Taylor had received effective assistance of counsel, and that Taylor's waiver of a jury

trial was knowing and voluntary.[1] Taylor appeals.

Taylor makes three arguments on appeal: (1) that his counsel failed to render adequate assistance; (2) that he did not knowingly and intelligently waive his right to a jury trial at both the guilt and penalty phases; and (3) that withdrawal of his original trial counsel constituted ineffective assistance of counsel or, in the alternative, a conflict of interest which extended to his new trial counsel.

■ In deciding habeas appeals, we review legal conclusions for correctness and factual findings for clear error. *Parsons v. Barnes,* 871 P.2d 516, 518 (Utah), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). Ineffective assistance of counsel claims present a mixed question of fact and law. *Id.*

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Taylor contends that his trial counsel were not sufficiently experienced to render adequate assistance to a capital homicide defendant. Taylor alleges that counsel's failure to meet the "prevailing norms" for experienced counsel resulted in both deficient performance and prejudice. We note, however, that Taylor's arguments regarding the *experience* of his counsel have no relevance to Taylor's claim of *ineffective assistance.* In addressing Taylor's claim, we do not rely on counsel's experience or on whether counsel met the "prevailing norms" for defense counsel in a capital case. Instead, we look to counsel's actual performance to determine whether it was adequate.[2] *See United States v. Hall,* 843 F.2d 408, 412–13 (10th Cir.1988) (holding that inexperience was not grounds for a presumption of ineffectiveness); *accord United States v. Badolato,* 701 F.2d 915, 926 (11th Cir.1983); *see also Burden v. Zant,* 903 F.2d 1352, 1361 (11th Cir.1990) (holding that inexperience does not constitute ineffective-

ness per se; petitioner must still make showing of deficient performance and prejudice), *rev'd on other grounds,* 498 U.S. 433, 111 S.Ct. 862, 112 L.Ed.2d 962 (1991).

■ To determine whether a petitioner's right to effective assistance of counsel has been violated, we apply the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Parsons,* 871 P.2d at 521. First, a petitioner must show "that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment." *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988). Second, a petitioner must show that his counsel's performance prejudiced him. *Id.*

■ To prevail on the first prong, a petitioner must overcome a strong presumption that counsel rendered adequate assistance. *Parsons,* 871 P.2d at 522. The petitioner must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness. *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) (citing *Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2065). We give counsel wide latitude to make tactical decisions and will not question such decisions unless we find "no reasonable basis" for them. *Fernandez v. Cook,* 870 P.2d 870, 876 (Utah 1993) (citing *State v. Tyler,* 850 P.2d 1250, 1256 (Utah 1993)).

■ As to the second prong, a petitioner must proffer evidence sufficient to support " 'a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.' " *Parsons,* 871 P.2d at 522 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). In addition, when a petitioner is challenging a death sentence, we must determine whether

---

1. Taylor brought additional claims which the court denied prior to the evidentiary hearing and which are not part of this appeal.

2. In 1993, subsequent to Taylor's trial, this court promulgated a rule setting out minimum standards for defense counsel in a capital case. Utah R.Crim.P. 8. The requirements set out in rule 8

have no bearing on Taylor's petition because rule 8 was not in effect at the time of his trial in 1989. The only statutory standards applicable to Taylor at the time of his trial were those contained in Utah Code Ann. § 77–32–1(2), requiring the county to "[a]fford timely representation by competent legal counsel."

a reasonable probability exists that absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Parsons,* 871 P.2d at 522 (citing *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068).

Taylor asserts numerous claims of ineffective assistance. He claims that his counsel rendered ineffective assistance by (1) failing to request a new preliminary hearing after the withdrawal of Taylor's original counsel, (2) failing to conduct an adequate pretrial investigation, (3) failing to make all pertinent pretrial motions, (4) advising Taylor to waive a jury for both the guilt and penalty phases, and (5) failing to adequately prepare for the penalty phase. On the basis of our review of the record, we reject Taylor's ineffective assistance claims and will discuss each in turn.

■■■■ Taylor alleges that when his original counsel withdrew from the case following the preliminary hearing, his new counsel should have moved to remand the case for a new preliminary hearing. Taylor reasons that a new preliminary hearing would have provided counsel the opportunity to observe witnesses and engage in discovery. *See State v. Anderson,* 612 P.2d 778, 784–86 (Utah 1980) (recognizing the ancillary benefits of the preliminary hearing). At the rule 65B evidentiary hearing, Taylor put on an expert witness who testified that he would have moved for a new preliminary hearing for various tactical reasons, such as enabling counsel to personally gauge the witnesses' credibility and impact on the trier of fact.[3] Taylor's counsel Don Redd testified, however, that he and co-counsel Martin Gravis concluded a new preliminary hearing was unnecessary and would actually have helped the prosecution in its preparation for trial. Redd testified that he and Gravis had a "good feel" for the case and did not want to assist the prosecution by giving them another opportunity to preview the case. Counsel were able to personally interview witnesses who had testified at the preliminary hearing

and to ascertain the expected testimony of other witnesses by reviewing the transcript of the preliminary hearing. We find no reason to question the reasonableness of counsel's decision not to move for a new preliminary hearing and to instead rely on interviews and a review of the preliminary hearing transcript. Furthermore, Taylor has failed to identify how the lack of a new preliminary hearing prejudiced him. He does not cite any avenue of cross-examination or testimony at trial which might have been favorably affected by a second hearing. Accordingly, we reject this claim.

■■■ Taylor also claims that counsel's pretrial investigation was inadequate. He alleges that counsel were deficient in failing to independently investigate police reports and fingerprint evidence and in making no effort to scientifically assess the community's attitude toward the crime and Taylor himself before deciding to advise Taylor to waive the jury. Taylor also claims that counsel made no effort to interview witnesses and determine their impact on the trier of fact. We reject Taylor's contentions.

■■■ Sufficient performance requires that counsel adequately investigate the underlying facts of a case. *See Tyler,* 850 P.2d at 1255 (citing *State v. Templin,* 805 P.2d 182, 188 (Utah 1990)). A review of the record demonstrates that counsel met this standard as a whole, as well as with respect to Taylor's specific contentions.

Counsel and the investigator assigned to the case interviewed individuals whom Taylor identified as potential witnesses, as well as witnesses identified by reviewing the police reports. Counsel investigated rather extensively Taylor's contention that another potential suspect, Robert Braswell, had allegedly been watching the victim in the park and had committed the murder. Counsel interviewed people who lived in the apartment complex, including residents the police officers had talked to during their canvass. Counsel re-

---

**3.** At the evidentiary hearing, Taylor put on expert witnesses who testified as to what they would have done differently at various junctures of the trial. We note that while such testimony may demonstrate what tactics a particular attorney may have used, it does not necessarily demonstrate that any alternative tactics petitioner's counsel chose were unreasonable. Neither does such testimony demonstrate how the outcome of Taylor's trial could have been different had his counsel acted as Taylor's expert witnesses would have acted.

viewed the prosecution's records as well as the investigating officers' records and interviewed the investigating officers. Counsel interviewed some of the witnesses who testified at the preliminary hearing, including some of the police officers and crime lab personnel, and interviewed all of Taylor's family. Counsel also found a witness to impugn the credibility of the State's witness Charlene Heun, who testified that she saw Taylor at the stairs of the victim's apartment building near the time of the murder.

■ Taylor specifically claims that counsel were deficient in making no effort to independently verify the accuracy of fingerprint evidence placing Taylor at the scene of the crime and in failing to retain a fingerprint expert to challenge the State's testimony regarding the fingerprint evidence. We disagree. Taylor's original counsel, who represented him at the preliminary hearing, acknowledged the strength of the testimony from the State's fingerprint expert. The State's expert testified at the preliminary hearing that twelve points of positive comparison would have supported a positive identification, that he marked thirty-two points of positive comparison between the prints removed from the phone in the victim's apartment and Taylor's prints, and that he had matching prints from adjacent fingers, thereby eliminating any possibility of a misidentification. Taylor's replacement counsel, after interviewing the State's fingerprint experts, determined not to put on their own print expert. Such a decision is generally a matter of trial strategy, and in this case, we find no reason to question counsel's conclusion. *See Fernandez,* 870 P.2d at 876; *accord Tyler,* 850 P.2d at 1256. Moreover, Taylor has not provided us with any evidence that another fingerprint expert would have reached a different conclusion or that there was in fact any deficiency in the fingerprint evidence that further investigation would have identified.

■ Taylor also asserts that counsel should have investigated further before advising him to waive the jury for the guilt and penalty phases. In particular, Taylor asserts that counsel should have "scientifically assess[ed]" the community attitude toward the crime and questioned the judge directly regarding his attitudes or filed a motion for a change of venue. We reject Taylor's contentions. Effective assistance does not require that counsel poll the community before advising a defendant to waive a jury trial. Particularly in a case such as this, counsel did not need to conduct a scientific poll to reasonably gauge the community attitude regarding a case in which a young girl was sexually abused and strangled. Counsel had a reasonable basis for advising Taylor that a judge could separate the issue of guilt from the emotional impact of rape-murder evidence better than even a properly selected and impartial jury.

■ We also reject Taylor's contention that counsel should have further investigated the trial judge's attitudes before waiving a jury trial. Counsel must reasonably assume that a judge will apply the law justly and make an impartial decision in both the guilt and penalty phases of a capital trial. Even as to death penalty issues, we must assume that a judge will disregard any personal beliefs and discharge his or her duty to apply the law. *See* Code of Judicial Conduct canon 3B(2). Indeed, absent specific allegations of personal bias, we cannot conceive of any situation in which choosing a judge over a jury would not constitute a legitimate tactical decision.[4] Judges are by definition assumed competent and obligated to follow the law; nor is there any precedent for the notion that litigants could properly examine a judge on such issues.

■ Taylor further specifically claims that counsel were deficient in deciding not to interview the victim's mother before trial to determine her impact on the trier of fact. However, after reading the mother's testimo-

---

**4.** As to Taylor's claim that counsel should have attempted a change of venue before waiving the jury, counsel considered this possibility but concluded that a change of venue would not guarantee that Taylor would be tried in a venue preferable to Weber County. Taylor has made no show-

ing that counsel's decision was unreasonable. Nor has Taylor demonstrated a reasonable probability that he would have prevailed on a motion to change venue or that a change of venue would have produced a different outcome in his trial and sentencing.

ny in the preliminary hearing transcript, counsel concluded that they could accurately gauge the mother's expected demeanor at trial by the preliminary hearing transcript. Counsel thus had a reasonable basis for deciding not to interview the victim's mother prior to trial. *See Fernandez,* 870 P.2d at 876–77 (holding that we will not question counsel's decision that pursuing certain investigations would prove fruitless or harmful, absent a showing that counsel's belief was unreasonable); *see also Mulligan v. Kemp,* 771 F.2d 1436, 1442–43 (11th Cir.1985) (finding that decision not to interview the State's witnesses did not constitute ineffective assistance where counsel knew the substance of their testimony), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1358, 94 L.Ed.2d 529 (1987). Furthermore, Taylor does not explain what benefit would have accrued from a personal interview.

■ Taylor also specifically argues that counsel should have pursued a "voice lineup" for twelve-year-old Catherine Bingham, who testified at trial that a man answered when she dialed the victim's phone number. Counsel interviewed Bingham and concluded that given her emotional state, she might have said something harmful to Taylor in a voice lineup. We conclude that counsel had a reasonable basis for reaching a tactical conclusion not to pursue a voice lineup.

In sum, Taylor's claims of deficient investigation ignore the substantial independent investigation performed by counsel and their investigator. Counsel conducted their own investigation of the underlying facts, including searching for any evidence that might have supported Taylor's claim that although he was in the victim's apartment, someone else committed the murder. Taylor has failed to identify what additional independent investigation his case required or what it might have uncovered, nor has he shown a reasonable probability that additional investigation would have brought a different result.

■ Taylor's next claim of ineffective assistance is based on counsel's failure to file any pretrial motions, apart from the motion for discovery and the motion to waive the jury. Specifically, Taylor claims that counsel should have sought a mistrial after learning that Judge Roth was exposed to certain evidence left in the file which, as the trier of fact, he should not have been exposed to. Taylor claims that counsel's advice not to seek a mistrial constituted ineffective assistance. We disagree. Counsel consciously and legitimately concluded not to move for a mistrial on the basis of their determination that Judge Roth could separate the inadmissible evidence from the admissible evidence and would reach a decision that was based only on the admitted evidence. We find no reason to question counsel's strategic decision not to risk trial before a less sympathetic judge or before a jury. *See Nevels v. Parratt,* 596 F.2d 344, 345–47 (8th Cir.) (holding that counsel was not deficient in not moving for mistrial when juror overheard conversation about case where juror assured court he could remain impartial), *cert. denied,* 444 U.S. 859, 100 S.Ct. 122, 62 L.Ed.2d 79 (1979). As to other motions, Taylor does not specify what they would have been based on or how he could have prevailed.[5] Nor does Taylor show that if he had prevailed on any given motions, a different outcome would have resulted. In sum, we are not convinced that counsel were deficient in filing pretrial motions.

■ Taylor also makes numerous claims of ineffectiveness regarding the penalty phase. He alleges that counsel waited until after the guilt phase to begin preparing for the penalty phase and that this constituted ineffective assistance. We first note that such an allegation in and of itself raises no inference of deficient performance. *Cf. Parsons,* 871 P.2d at 526 (refusing "to determine what amount of time counsel must spend with a defendant to ensure that the representation does not fall below an objective standard of reasonableness"). Moreover, the

---

5. At the 65B hearing, Taylor put on expert witnesses who testified as to certain motions which suggest themselves "routinely" after arraignment. Such testimony has little if any relevance to the issue of ineffective assistance, because it does not demonstrate that what counsel did or did not do in this particular case was unreasonable. The fact that defense motions are routinely made suggests nothing about their usefulness or validity.

record refutes Taylor's claim that the initial preparation for the penalty phase did not begin until after the guilt phase. Redd testified that although intensive preparation for the penalty phase did not begin until after the guilt phase, counsel's investigation of guilt phase evidence included looking for mitigating evidence for use at the penalty phase. Furthermore, Taylor testified that counsel and the investigator discussed Taylor's background, upbringing, and prior criminal history during their initial interview with him. Likewise, Gravis testified that he discussed possible mitigating evidence with Taylor within the last month before the guilt phase began. Finally, Redd testified that counsel had sufficient time to prepare for the penalty phase and could have received additional time from Judge Roth had they needed it. We are therefore convinced that counsel's choice of a time frame in which to prepare for the penalty phase did not result in deficient performance.

 Taylor also argues that counsel failed to pursue leads to mitigating psychological and medical evidence. We find that the record refutes this allegation. Counsel did pursue leads to such mitigating evidence but made a legitimate strategic determination that introducing the evidence would be more aggravating than mitigating.[6] For example, counsel reviewed prior psychological reports of Taylor and determined that admitting them as evidence would be more harmful than helpful. We have reviewed the reports and conclude that counsel's decision was reasonable. Psychological reports generated when Taylor was committed to a sex offend-

ers' program in Florida at the age of seventeen portray him as a remorseless pedophile and thief who preyed on those weaker than he and generally conclude that Taylor remained a danger to society. The Florida reports also assert that Taylor admitted to sexually assaulting several young girls, some evidence of which the State introduced at the penalty phase. The reports also contain complaints by other patients that Taylor attempted to rape them. Later psychological evaluations report that Taylor's long-term prognosis was poor and conclude from screening test results that there was no reason for believing that Taylor had brain damage.

After reviewing Taylor's prior psychological reports, counsel determined that other evaluations should be done. Counsel had Taylor examined by two psychologists and obtained a written evaluation from one of them. Counsel also considered the possibility of claiming that Taylor suffered from posttraumatic stress disorder, but the psychologists consulted concluded that Taylor did not suffer from the disorder. In sum, we find no reason to question the legitimacy of counsel's tactical conclusion not to introduce psychological evaluations of Taylor because the evaluations could have proved more harmful than helpful. Indeed, even Taylor's own expert witness testified that the reports were damaging.

 Taylor also argues that counsel performed deficiently at the penalty phase because the only mitigation witnesses they

---

6. Taylor has directed us to no leads which counsel failed to investigate. *See* Utah R.App.P. 24(a)(9) (requiring appellants to support their arguments with analysis and citations to the record). Although Taylor testified at the 65B hearing about a psychological record from the Fitzsimmons military hospital containing reports of abuse he had sustained as a child, neither counsel remembers Taylor ever telling them about these reports. We note that the reasonableness of investigative decisions critically depends on information the defendant supplies. *See Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Furthermore, even if counsel had known of the Fitzsimmons report, Taylor did not introduce the report at the 65B hearing so as to establish that it contained mitigating evidence. We therefore conclude that failure to investigate or introduce

the Fitzsimmons report did not constitute ineffective assistance.

Taylor also testified that counsel should have interviewed the authors of certain reports generated when Taylor was committed to a sex offenders' program in Florida, because interviewing the authors might have led to other mitigating evidence. Counsel, however, legitimately determined not to contact the authors of the Florida reports, as the content of the reports gave no indication that the authors would have anything to offer as mitigation. *See Fernandez*, 870 P.2d at 876–77 (holding that we will not question counsel's decision that pursuing certain investigations would prove fruitless or harmful, absent a showing that counsel's belief was unreasonable).

called were an aunt and uncle who had not seen Taylor for thirty years. We note, however, that the general dearth of mitigating evidence offered at the penalty phase does not in itself establish deficient performance. Taylor was in the best position to know of any possible mitigating evidence and to direct his counsel toward it. In this case, counsel investigated possible mitigating witnesses and used what witnesses they reasonably believed were helpful. Counsel interviewed Taylor's family members and determined that, except for those few who testified, their testimony would be more harmful than helpful. For example, counsel interviewed Taylor's father but determined that his testimony would not be very credible. Moreover, Taylor's father requested that he not testify. Taylor's counsel also interviewed Taylor's mother, whom they found to be hostile, and Taylor's two sisters. Counsel concluded that one sister's testimony would be more harmful than helpful. Indeed, that sister testified for the State to the effect that Taylor raped her three times when she was twelve or thirteen. Taylor's other sister also testified for the State that Taylor began "having problems" with little girls when he was about fourteen or fifteen years old. Although Taylor's counsel tried to utilize some of her testimony from cross-examination in their argument that Taylor was abused as a child, counsel's decision not to call her as a witness on Taylor's behalf constituted a reasonable strategic decision; they were in fact unable to elicit any helpful testimony from her on cross-examination. *See Fernandez,* 870 P.2d at 876. We find no legitimate basis for questioning counsel's determinations. *See Tyler,* 850 P.2d at 1256 (recognizing that counsel's choice of what witnesses to call lies within counsel's prerogative and will not be considered ineffective unless we find no reasonable basis for counsel's decision).

▉ In sum, at the penalty phase counsel performed reasonably and adequately with the mitigating evidence that was available. For example, by relying on testimony from Taylor's sister, aunt, and uncle, counsel argued that Taylor's mother and stepfather had abused him. As stated above, the general dearth of mitigating evidence in the penalty phase of Taylor's trial does not

itself constitute ineffectiveness. It simply appears that there is very little evidence in mitigation of Taylor's crime. Taylor wholly fails to identify any mitigating evidence that could have been introduced so as to create a reasonable probability that the trial court would have concluded " 'that the balance of aggravating and mitigating circumstances did not warrant death.' " *Parsons,* 871 P.2d at 522 (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069).

▉ Taylor also claims that it was deficient performance for counsel to advise him not to testify at the penalty phase. We disagree. Counsel's advice to Taylor not to testify was reasonable, particularly in light of Judge Roth's statement following the guilt phase that he found Taylor's testimony lacked credibility. We have recognized that trial strategy generally is within counsel's prerogative and is left to counsel's professional judgment. *Tyler,* 850 P.2d at 1256. Therefore, such decisions "will not be questioned and viewed as ineffectiveness unless there is no reasonable basis for that decision." *Id.* (citations omitted).

In sum, counsel's performance was reasonable and adequate. All of counsel's challenged decisions fall within the presumption that they constituted legitimate tactical decisions. Furthermore, Taylor has failed to demonstrate how counsel's performance prejudiced his case. A bad outcome alone does not permit an inference of deficient performance. For the foregoing reasons, we find that Taylor was not denied effective assistance of counsel.

## JURY WAIVER

▉ Taylor contends that he did not knowingly and intelligently waive his right to a jury trial at either the guilt or the penalty stage. As to the guilt stage, Taylor alleges that his waiver was not knowing because it was based on inadequate advice from counsel. As discussed above, we find that counsel did not perform deficiently in advising Taylor to waive a jury trial. Counsel's advice was based on a legitimate strategic decision, and counsel fully and adequately explained to Taylor his right to a jury and the ramifica-

tions of a waiver. In addition, Judge Roth spoke with Taylor directly, informing Taylor of his absolute right to a jury trial and the implications of waiving his right. We therefore agree with the trial court's conclusion that Taylor knowingly and intelligently waived his right to a jury trial. *See State v. Moosman,* 794 P.2d 474, 479 (Utah 1990).

■■■ As to the penalty phase, Taylor alleges that his waiver was not knowing because his counsel and the trial court failed to advise him with certainty that he was waiving both phases. The record rebuts Taylor's argument. During the waiver discussion prior to trial, Judge Roth stated three times that he interpreted the applicable statute to require a jury waiver at the penalty phase if Taylor waived the jury at the guilt phase. *See* Utah Code Ann. § 76–3–207. Although Judge Roth stated that he would leave himself open to revisiting the issue later should counsel choose to raise it, his statements made it clear that Taylor's waiver went to both phases. After Judge Roth explained his position, Taylor stated that he had no questions about his decision to waive the jury, declined an offer of more time to discuss the issue with his counsel, and acknowledged that he waived the jury "with full knowledge of the possible consequences." Also, at the 65B hearing Taylor admitted that he understood how Judge Roth interpreted the statute, i.e., once Taylor waived the jury for the guilt phase, he also waived it for the penalty phase. Although Taylor qualified this admission by testifying that he understood he could challenge Judge Roth's interpretation at a later point, Taylor admitted that he never again discussed the matter with his counsel.

■■■ Taylor now submits that counsel were deficient in failing to pursue the issue of a jury for the penalty phase, after the court's invitation to revisit the issue. Although counsel persuaded Judge Roth to keep the issue open, this does not mean that counsel had an obligation to revisit it. At the 65B hearing, counsel testified that their intent throughout the proceedings was to waive the jury for both stages and that Taylor agreed with this position. Taylor understood Judge Roth's position and never made

known, to either the court or his counsel, an intent not to waive the jury for the penalty phase. Finally, as we discussed above, counsel's advice to waive the jury for both phases constituted a legitimate strategic decision. Notwithstanding the fact that following the guilt phase, Judge Roth had expressed skepticism about Taylor's credibility, counsel's decision not to revisit the waiver issue was not deficient. Taylor had very little going for him in the penalty phase, and the determination that his chances were better with a judge than a jury was perfectly plausible.

## REPRESENTATION AT THE PRELIMINARY HEARING

■■■ Taylor's final claim is based on his representation at the preliminary hearing. Taylor alleges that if his original counsel had a conflict of interest, then this conflict extended to Taylor's replacement counsel, Martin Gravis, because Gravis had managed the office where original counsel worked. In the alternative, Taylor argues that if there was no conflict of interest with original counsel, then their withdrawal constituted ineffective assistance.

The record demonstrates that there was no direct conflict between Taylor's original counsel and the prosecuting attorney. Reed Richards, the county attorney for Weber County at the time of Taylor's trial, had been a partner with John Caine and Bernie Allen, Taylor's original counsel, in a law firm until just before January 1, 1988. Taylor was not charged until July 18, 1989. There were no allegations that Taylor's counsel communicated any information about Taylor's case to Richards. We therefore find that there was no actual conflict with Taylor's original counsel and consequently no conflict which would extend to Taylor's replacement counsel.

■■■ As to Taylor's alternative argument, we find that although original counsel had no actual conflict of interest in representing Taylor, their decision to withdraw was appropriate due to their concern that members of the community might perceive their continued representation as being improper. Moreover, original counsel were replaced

with adequate counsel at an early point in the proceedings. Finally, as we discussed above, counsel's failure to request a new preliminary hearing in the absence of a conflict with prior counsel did not constitute ineffective assistance; it was a reasonable tactical decision.[7]

The trial court's denial of Taylor's petition is affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.

---

7. Taylor also argues that the withdrawal of his original counsel prejudiced him because their withdrawal deprived him of the only experienced counsel in Weber County and, therefore, he was appointed inexperienced counsel, which inevitably led to his conviction and death sentence. As discussed above, a claim of "inexperience," standing alone, has no merit but must be addressed as an ineffective assistance claim. Because we have already discussed and rejected Taylor's ineffective assistance claim, we do not treat it here.