STATE of Utah, Plaintiff and Appellee,

v.

Jack Neil COLONNA, Defendant and Appellant.

No. 870136.

Supreme Court of Utah.

Dec. 13, 1988.

---

Joan C. Watt, George Waddoups, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, David B. Thompson, Salt Lake City, for plaintiff and appellee.

DURHAM, Justice:

Defendant Jack N. Colonna was tried by a jury and convicted of aggravated robbery pursuant to Utah Code Ann. § 76-6-302(1)(a) (1978). Defendant's appellate counsel [1] argues that (1) defendant was entrapped as a matter of law; (2) defendant's right to due process as guaranteed by the Utah and United States Constitutions was violated by the outrageous conduct of a police officer; and (3) defendant was denied his constitutional right to effective assistance of counsel. We affirm.

The following summary reflects the evidence supporting the jury's verdict. On the evening of December 17, 1986, Michael Droubay, an undercover narcotics officer working for the Salt Lake County Sheriff, met with Charles Webber, a paid drug informant, at the residence of Reed Rudy, where Droubay and Webber had arranged to buy some marijuana. At approximately 8:00 p.m., defendant and Manny East arrived at the Rudy residence. Shortly thereafter, East inquired about Droubay's and Webber's presence. Droubay and Webber indicated to East that they wanted to buy cocaine. East then contacted someone by telephone about arranging to purchase cocaine. Droubay, East, and defendant left to complete the transaction and later returned to the Rudy residence.

Cocaine, marijuana, and beer were consumed throughout the evening. Officer Droubay testified that he drank beer but

1. Defendant was represented by a different attorney at trial.

only simulated the ingestion of cocaine and marijuana. Officer Droubay provided much of the supply of illicit substances in an attempt to gain the confidence of defendant and East. While at the Rudy residence, East began talking about someone whom he claimed had "ripped off" part of his drug distribution territory while East had been in California.

At approximately 10:00 p.m., Droubay, East, Webber, and defendant left the Rudy residence in Droubay's car. After dropping Webber off at his home, East again talked about the person who had "ripped him off." He expressed a desire to retaliate against this person, whom he identified as Craig Britton. Droubay drove to a bar, hoping to make a telephone call to alert the police to possible trouble. While at the bar, the three drank beer while East made a telephone call to Britton and arranged to meet him that night. Droubay was unable to make his call. The three then drove to the home of Craig Britton. Droubay testified at trial that he was concerned because he did not know what was going to happen at Britton's residence. Droubay claimed that he accompanied the two men in order to defuse any violence.

Upon arriving at Britton's residence, the three entered the house. When they found Britton, East yelled at Britton and questioned him about the location of marijuana and money. Defendant pointed a cocked revolver at Britton's midsection and screamed at him, accusing him of wronging East. East left the room briefly and returned with another revolver and an ammunition belt belonging to Britton. Droubay took the revolver from East, unloaded it, and threw it down a flight of stairs. The four men then went into Britton's bedroom, where Britton removed a small quantity of marijuana from a dresser and handed it to East. The men returned to the kitchen, where Droubay found Britton's wallet. Either Droubay or East took the money out of the wallet. Throughout the incident, East and defendant shared the duty of holding the gun on the victim.

At some point while defendant was pointing the gun at Britton, defendant and Brit-

ton became agitated with each other. Droubay stepped in to calm the dispute and tried to pacify defendant by hitting Britton on the nose and the back of his head.

After the incident, Droubay, East, and defendant left Britton's residence with the money, marijuana, and Britton's revolver. On the way out, defendant apologized to Britton for the incident. The three drove to the apartment of defendant's ex-wife. While there, Droubay, East, and defendant divided the property taken from Britton. Droubay then drove East and defendant to the Rudy residence, where they parted company, and they had no further contact.

The following day at 1:30 p.m., Droubay reported the incident to a narcotics officer with the Salt Lake County Sheriff's Department. On December 19, 1986, defendant was arrested and charged with aggravated robbery and theft. On the morning of the trial, defense counsel attempted to have the court accept a guilty plea pursuant to a plea bargain. The judge refused to approve the plea bargain because it was untimely. Subsequently, defendant was tried and convicted by a jury.

Approximately five months later, defendant's appellate counsel filed a motion to set aside the guilty verdict and to enforce the plea bargain. The defense claimed that if former counsel had presented the plea bargain offer before the morning of the trial, defendant would have been convicted only of robbery. The court denied the motion.

Defendant appeals to this Court contending, first, that he was entrapped, second, that his right to due process was violated by Officer Droubay's outrageous conduct, and third, that he was denied effective assistance of counsel.

Defendant argues that he was entrapped as a matter of law pursuant to Utah Code Ann. § 76–2–303(1) (1978). He claims that the crime of aggravated robbery would not have occurred but for the officer's conduct in supplying drugs, alcohol, and transportation, thereby causing defendant to commit the crime.

■ Utah Code Ann. § 76–2–303(2) (1978) states: "The defense of entrapment

shall be unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on the conduct causing or threatening the injury to a person other than the person perpetrating the entrapment." Defendant insists that the foregoing statute is inapplicable here because Britton did not sustain serious bodily injury, nor was it charged. Defendant was charged with aggravated robbery based on subsection (a) of Utah Code Ann. § 76–6–302(1) (1978), which states: "A person commits aggravated robbery if in the course of committing a robbery, he: (a) [u]ses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon." Defendant contends that because aggravated robbery under subsection (a) does not require threats of bodily injury as an element of the offense, section 76–2–303(2) does not apply.

Defendant's reading of section 76–2–303 is excessively literal. The crime of aggravated robbery includes by implication the existence of a threat of injury. The commission of robbery using a firearm necessarily implies a threat of bodily injury to the victim. In fact, the legal definition of simple robbery denotes that the threat of force or fear is present. *See* Utah Code Ann. § 76–6–301(1) ("[R]obbery is the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear."). Thus the threat of bodily injury is a necessarily implied element of an aggravated robbery charge based on subsection (a). The threat exists if the statutory elements of simple robbery and use of a weapon are proved. We therefore hold that the threat of bodily injury, which precludes entrapment, is an element of the offense charged in this case, thereby making subsection (2) of Utah Code Ann. § 76–2–303 applicable. Defendant is not entitled to the defense of entrapment.

■ As an alternative to his entrapment claim, defendant argues that his conviction should be reversed because Officer Droubay's behavior before and during the robbery was so "outrageous" that it would be a denial of due process of law under the state and federal constitutions to convict defendant of the crime.

Defendant relies on the four-pronged test in *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78 (1978), to claim that he was denied due process:

(1) [W]hether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity; (2) whether the police themselves engaged in criminal [sic] of improper conduct repugnant to a sense of justice; (3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation of exorbitant gain, or by persistent solicitation in the face of unwillingness; and (4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace.

*Id.* 406 N.Y.S.2d at 719, 378 N.E.2d at 83 (citations omitted).

Although we do not preclude the possibility of adopting the *Isaacson* standard in the future, we are not inclined to do so in this case. The facts in this record do not require that we resort to the *Isaacson* test. As the United States Supreme Court stated in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973):

While we may some day be presented with a situation in which the conduct of the law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed.

*Id.* at 431–32, 93 S.Ct. at 1642–43 (citations omitted).

Officer Droubay may well have erred in judgment by supplying drugs, alcohol, and transportation to defendant and East. However, by furnishing transportation, the officer merely associated himself with criminal activity, he did not initiate it. A reasonable view of the facts suggests that

some type of revenge against the victim by East and defendant was likely and that the officer's decision to accompany East and defendant to the Britton residence to temper the conflict was within reason.

Although defendant's criticisms of Droubay's behavior[2] are justified, the officer's conduct was not so outrageous as to shock the conscience, nor was it fundamentally "repugnant to the American criminal justice system," *Greene v. United States*, 454 F.2d 783, 787 (9th Cir.1971), in context. Therefore, we conclude that Droubay's conduct was not so extreme as to constitute a due process violation under either the Utah or the United States Constitution.[3]

Defendant's final contention is that he was denied his constitutional right of effective assistance of counsel.

In *State v. Frame*, 723 P.2d 401, 405 (Utah 1986), this Court stated that "defendant must prove that specific, identified acts or omissions fall outside the wide range of professionally competent assistance" and that a reasonable probability exists that absent counsel's error, the result would have been different. *See also State v. Speer*, 750 P.2d 186, 191 (Utah 1988). In *Codianna v. Morris*, 660 P.2d 1101 (Utah 1983), we described several considerations relevant to ineffective assistance of counsel claims:

> (1) The burden of establishing inadequate representation is on the defendant, "and proof of such must be a demonstrable reality and not a speculative matter." *State v. McNicol*, [Utah] 554 P.2d [203] at 204 [1976]. (2) A lawyer's "legitimate exercise of judgment" in the choice of trial strategy or tactics that did not produce the anticipated result does not constitute ineffective assistance of counsel. *State v. McNicol*, 554 P.2d at 205. (3) It must appear that any deficiency in performance of counsel was prejudicial. *State v. Forsyth*, Utah, 560 P.2d 337, 339

(1977); *Jaramillo v. Turner*, 24 Utah 2d 19, 22, 465 P.2d 343, 345 (1970).

*Id.* at 1109.

In analyzing a defendant's complaints about counsel, this Court usually gives great deference to counsel's trial decisions, and mistakes in trial strategy or tactics do not render counsel's performance ineffective. Generally, an attorney's performance will be held ineffective only when there is no tactical or strategic justification for his conduct of the trial. Thus, when counsel has failed to take a particular action, a court must determine whether such failure was justified by tactical or other considerations. *State v. Buel*, 700 P.2d 701, 703 (Utah 1985); *Codianna v. Morris*, 660 P.2d at 1109.

Defendant claims ineffective assistance of counsel in connection with four instances of alleged error: (1) counsel's failure to raise the defense of entrapment; (2) counsel's failure to move to dismiss the information based on outrageous police conduct; (3) counsel's failure to object or move for mistrial after a witness's reference to defendant's past arrests; and (4) counsel's failure to complete plea bargain negotiations in a timely fashion and to prepare adequately for trial.

We have already dealt with the issues related to entrapment and outrageous conduct and have determined that neither has merit. In view of that determination, the failure to raise those issues at trial could not have affected the outcome of this case.

█ In connection with defendant's claim that defense counsel failed to object or move for a mistrial after prejudicial comments in Officer Droubay's testimony, we must determine whether the failure to object fell below the applicable standard of professional care or whether it may have been tactical in nature. Defendant cites three occasions where counsel should have objected to prejudicial comments which he

---

2. Even according to the officer's testimony, it was he and not defendant or East who physically assaulted the victim. The victim testified that he was most afraid of the officer, believing that East and defendant had brought Droubay along to beat him up.

3. Notwithstanding this legal conclusion, we emphasize that the officer's behavior was marginal and certainly did not conform to the standards applicable to law enforcement personnel, even those working undercover.

claims affected the outcome of the trial. The first instance occurred early in Officer Droubay's testimony:

[*Prosecutor*]: After Mr. East came in, what happened?

*Mr. Droubay:* He came in and made the statement, something to the effect that Jack had taken the gun away from somebody at sometime or on some kind of deal on the street.

Defendant claims that the foregoing comment suggesting defendant's involvement in illegal acts was inadmissible hearsay and should have been objected to.

■ The second incident involved Officer Droubay's testimony about his initial contact with defendant. It went as follows:

[*Prosecutor*]: Do you recall what conversations you would have had in this type of conversation that you had [sic]?

*Mr. Droubay:* Just that I asked Jack if he had ever been arrested. He told me he had. I asked him if he had ever been roughed up and he said he had.

Defendant claims that counsel was negligent in failing to object to the officer's comments about defendant's previous arrests. Defendant cites Utah Code Ann. § 76–8–1002 (1978), claiming that the comments improperly alluded to criminal activity and negatively affected the jury's perception of defendant.

Defendant's final contention stems from counsel's failure to object to the following testimony:

[*Prosecutor*]: As you pulled over, describe for the jury what transpired in terms of your contact with the police, their contact with you, and any of the occupants you had in the car with you.

*Officer Droubay:* As we were being pulled over, my first thought was that maybe they had noticed Mr. Colonna in the car due to some of my background investigation. Mr. Colonna is very well known in West Valley City, Magna so forth.

Defendant contends that counsel's failure to object to these three statements prejudiced defendant's case and gave the jury a tainted view of him. Defendant insists that such evidence, suggesting prior bad acts and crimes, is generally considered highly prejudicial, especially when entrapment is a defense.

■ In analyzing defendant's claims, we agree that the first statement was inadmissible under the hearsay rule, Utah Rule of Evidence 803(3) (1988). Furthermore, all three of the challenged comments were inadmissible as character evidence under Utah Rule of Evidence 404(a) (1988). Evidence of past offenses is also inadmissible. In *State v. Hansen*, 588 P.2d 164, 167 (Utah 1978), which clarifies section 76–8–1002 (1978), this Court explained that the State is not permitted to introduce, during its case in chief, past offenses committed by defendant, even where entrapment is an issue. Thus there was a legal basis for an objection to all of the comments defendant identifies. However, taking these comments as a whole, they do not necessarily constitute harmful error, and it is conceivable that counsel made a deliberate and wise tactical choice in not focusing jury attention on them by objecting.

Although the comments made by Officer Droubay were problematic, they were brief and isolated. Furthermore, they were not so inflammatory as to change the outcome of the trial. The proper and admissible testimony in this trial about illicit drug use and defendant's behavior with his gun, none of which was controverted, was extensive and was so much more serious than the objectionable testimony that it is hard to see how the improper testimony could have done much harm.

We concede that trial counsel overlooked some details. For example, he should have arranged for defendant to have fresh clothes for trial so that he would not have been forced to wear the old, dirty clothing in which he had been arrested. Counsel's judgment in failing to object to inadmissible testimony may or may not have been poor. However, the testimony at trial established without much dispute all of the details of defendant's participation in the crime. The jury was not being asked to decide what he did so much as whether what he did coincided with the statutory

definition of aggravated robbery. Thus, it is unlikely that the outcome of this trial would have been different if counsel had objected to the comments identified on appeal, and therefore prejudice has not been demonstrated.

██ Defendant claims on appeal that a plea bargain was offered by the prosecutor, accepted by the defense, and on the day of trial, tendered to the court in chambers. The prosecution asserts that the parties had not in fact come to an agreement at the time of the trial. At the post-trial hearing on defendant's motion to enforce the plea bargain, the trial court's recollection was that there had been no representation on the day of trial that a plea agreement had been reached before that time, and the court had assumed that defendant intended to go to trial up to the morning thereof. By the time the plea agreement was presented to the trial court, the jury had been called, witnesses had been subpoenaed, and the trial was ready to proceed. The trial court refused to accept the plea bargain because it was not submitted for court approval in accordance with the rules of practice of the court, which prohibited the acceptance of guilty pleas on the day of trial unless they were to the charge in the information.

This is not a case in which a defendant challenges the skill and competency of trial counsel in the negotiation process or in advice given regarding acceptance or rejection of a proposed plea bargain. As to those cases, we have generally refused to oversee the bargaining process. *See State v. Geary,* 707 P.2d 645, 646 (Utah 1985) ("[defendant] loses sight of the fact that our state and federal constitutions guarantee fair trials, not plea bargains"); *State v. Knight,* 734 P.2d 913 n. 7 (Utah 1987) (dealing with "outcome of a trial, not the outcome of plea bargaining"). In this case, however, defendant relies on a claimed procedural default by counsel—a failure to know and follow court rules regarding court approval of an existing plea bargain, rather than a failure to bargain properly. Although we have not heretofore considered this question, we decline to reach it in this case because of an inadequate record.

The facts concerning the plea bargain in this case are sketchy. Although defendant maintains that negotiations were undertaken by trial counsel, we do not know the time frame or the extent of these claimed negotiations, nor is there anything in the record showing that a bargain had been consummated. To pursue a claim of failure to communicate a plea bargain to the court in a timely fashion, defendant must prove at least that a specific offer was in fact made and accepted. *See, e.g., Young v. State,* 470 N.E.2d 70 (Ind.1984). In *Spriggs v. State,* 139 Ga.App. 586, 587–88, 228 S.E.2d 727, 729 (1976), for example, the court rejected an ineffectiveness contention based partly on counsel's failure to apprise the judge of the plea bargain during sentencing, concluding that there was nothing in the record to show that a plea bargain was actually ever made by counsel.

In the instant case, the record does not show that a plea bargain had been entered into, although negotiations had apparently taken place. At the hearing to set aside the verdict, defendant's replacement counsel asserted that defendant's trial counsel was willing to prepare an affidavit acknowledging his unfamiliarity with the trial court's procedures and policies. No proffer of evidence was made, however, regarding the existence, timing, and terms of the bargain, and no affidavit was ever produced.

The limited facts available in this record do not allow for adequate review of the contention that counsel's performance fell below an objective standard of reasonable, professional judgment. Defendant has the burden of proving inadequate representation, and "proof of such must be demonstrable reality and not a speculative matter." *State v. McNicol,* 554 P.2d 203, 204 (Utah 1976). Defendant may not prevail on ineffectiveness claims where he has only raised the possibility of ineffective assistance of counsel but failed to offer evidence thereon.

AFFIRMED.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.