749 P.2d 1372

**STATE of Arizona, Appellee,**

v.

**Aaron Scott SAMMONS, Appellant.**

**No. CR–86–0317–AP.**

Supreme Court of Arizona,
En Banc.

Feb. 2, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Alan M. Metcalfe, Tucson, for appellant.

MOELLER, Justice.

## JURISDICTION

The offenses involved in this case relate to a "chop shop" operated in Tucson in late 1983 and early 1984. Testimony at trial explained that a "chop shop" is an operation in which vehicles are stolen and dismantled into salable component parts. After trial to a jury, defendant Aaron Scott Sammons was found guilty and sentenced on three counts of theft of property valued over $1,000, one count of attempted theft of property valued over $1,000, and one count of armed robbery. After sentencing, the state filed an appeal to Division Two of the court of appeals, and the defendant was then granted leave to pursue a belated appeal. The appeals have been consolidated. The court of appeals, believing the case involved a potential sentence of life imprisonment, concluded that it lacked jurisdiction to hear the case. *See State v. Avila*, 147 Ariz. 330, 334, 710 P.2d 440, 444 (1985). As a result, the court of appeals transferred the case to this court. As we explain below, we conclude that a potential sentence of life imprisonment is not involved. However, in the interest of judicial economy, we retained jurisdiction to resolve all issues raised by both appeals. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4032 and –4033.

## THE STATE'S POST–TRIAL MOTION TO AMEND THE INDICTMENT

After defendant was indicted by the grand jury, the state added an "Allegation of Committing a Felony While on Probation, Parole, Work Furlough or Any Other Release" which stated:

The County Attorney of the County of Pima, in the name of the State of Arizona, and by its authority, pursuant to A.R.S. § 13–604.01 [since renumbered A.R.S. § 13–604.02], alleges that the defend-

ant, AARON SCOTT SAMMONS, committed the offenses charged in the above-numbered Indictment while he was on parole *in Pima County Superior Court case number CR–05994*.

(Emphasis added.)

Following trial and conviction, a hearing was held on defendant's alleged parole status. The state called a parole officer who was supervising defendant's parole in *Graham County Superior Court case number 3748*. Over various objections, the court admitted into evidence a document called a "Departure and Arrival Sheet." This document had been prepared by the Department of Corrections and contained a parole expiration date for the Graham County offense. Based on this document and the testimony of the witness, the trial court originally made a finding that defendant was on parole at the time of the offenses.

However, before sentence was imposed, the trial court noted that the evidence received was totally unrelated to the Pima County offense referred to in the state's allegation. The state then orally moved to amend the allegation to conform to the "evidence." The defense argued that the amendment should be denied because it came too late in the proceedings and because the state's evidence was insufficient to support the amendment in any event. The following exchange occurred:

THE COURT: I think it's too late for the State to amend to allege a different offense for which he was on parole for.

So, it's the finding of this Court that the defendant was not—did not commit those offenses while on parole.

MR. FIGUERO [county attorney]: On parole for 5994.

THE COURT: On 5994.

MR. FIGUERO: So it's also your ruling he was on parole on 3748?

THE COURT: I did make that finding but that's not material, since it wasn't charged.

The state challenges this ruling in its appeal. We first note that there is a substantial question whether the state can ap-

peal the denial of a motion to amend the indictment. It is not listed as an appealable order in A.R.S. § 13–4032, which governs appeals by the state in criminal cases. A.R.S. § 13–4032(6) does permit the state to appeal on the grounds that a sentence is illegal, but there is no contention here that the present sentence is illegal—only that a different sentence would be mandated if the court had permitted the amendment and thereafter found that defendant was on parole status. A.R.S. § 13–4032(4) permits the state to appeal an adverse ruling on a question of law when the defendant appeals. Defendant did not appeal here until the state did. However, defendant has not suggested that his delayed appeal was advanced solely in response to the state's appeal or that it otherwise would not have been filed. We have jurisdiction of the case by reason of the defendant's appeal. Therefore, we note but do not resolve the issue of appealability of the order denying the post-trial amendment because we conclude that, even assuming appealability, the state has failed to demonstrate reversible error.

■ Turning to the merits of the state's argument that the court erred in denying the post-trial motion to amend the indictment, we note first that the trial court is invested with considerable discretion in resolving such motions. *State v. Jacobson*, 110 Ariz. 70, 515 P.2d 27 (1973).

■ The state relies on three authorities in support of its argument that the trial court erred in denying the motion to amend. First, the state argues that the variance between the parole offense alleged and the one sought to be proved was a "technical defect" amenable to correction without defendant's consent under Rule 13.5(b), Arizona Rules of Criminal Procedure. We disagree. Rule 13.5(b) provides:

**Altering the Charges; Amendment to Conform to the Evidence.** The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

In the original allegation, the state alleged that defendant was on parole in Pima County case CR–05994. The evidence produced by the state at the hearing tended to show that defendant was on parole in a different case from a different county. The state has offered nothing to show that the defendant had notice, independent from the indictment and the supplemental allegations, that the state intended to prove a different parole. It is entirely possible a defendant could be prepared to rebut the parole charged, but not some other, undisclosed, uncharged parole. We do not believe this is the type of "technical defect" contemplated by Rule 13.5(b).

Second, the state cites *State v. Noriega*, 142 Ariz. 474, 483, 690 P.2d 775, 784 (1984), for the proposition that "if there is an arguably sufficient, but erroneous, allegation in the indictment, the controlling inquiry is whether there was any surprise or prejudice to the defendant...." We do not find this allegation, however, to be "arguably sufficient." The error at issue in *Noriega* was citation in the indictment to A.R.S. § 13–604.01(B) rather than to A.R.S. § 13–604.01(A). Further, under the circumstances of *Noriega*, the court found that there was sufficient notice independent of the flawed charging document. As noted, there is no evidence of independent notice in this record. Thus, *Noriega* did not require the trial court to grant the motion to amend.

Finally, the state points out that *State v. Williams*, 144 Ariz. 433, 698 P.2d 678 (1985), found no prejudice in a post-verdict amendment substituting a third felony conviction for one of the two convictions alleged before trial. In that case, we pointed out that the amendment had not been timely and the applicable rules had not been complied with, but because the defendant had not been prejudiced, there would be no reversal. *Id.* at 442, 698 P.2d at 687. In *Williams* the post-trial amendment did not

affect the sentence, since the defendant was already being sentenced as a felon on parole under A.R.S. § 13–604.01 (now § 13–604.02). In the instant case, however, permitting the belated amendment would mandate a higher sentence if the state were successful in proving parole status.

■ By the time the state made its belated post-trial motion to amend in this case, the trial was long over. There had already been enhancement proceedings on prior convictions, on *Hannah* priors,[1] on dangerousness and on one attempt to prove parole status. At some point, it is time to proceed to sentencing and terminate the case at the trial court level. A review of the transcript shows that this is exactly what the trial court decided to do. There was no abuse of discretion in denying the motion to amend.

## WAS THE CORRECT SENTENCE IMPOSED ON THE ARMED ROBBERY COUNT?

■ Count X of the indictment, the armed robbery count, was alleged to be dangerous under A.R.S. § 13–604 and found to be such by the jury. The state had also alleged a prior conviction. Based on defendant's admissions during his trial testimony, the trial court found that he had a prior conviction. Additionally, in post-trial proceedings, the trial court found that Counts I, VII and IX were "Hannah" priors to the armed robbery count. The trial court sentenced defendant to twenty-eight years imprisonment on Count X, which is the maximum for a Class 2 felony with two or more priors. The trial court explained:

There is a choice of treating it one of two ways: either treating it as the third offense of a non-dangerous with the range of 14 years as a minimum, 15.75 as a presumptive, or 28 as a maximum; or treating it as a first offense, dangerous nature, which would be seven years minimum, 10.5 presumptive, or 21 years maximum.

On appeal, defendant argues that since the two prior convictions were not for dangerous offenses, the trial court was required to sentence defendant as a first-time dangerous offender. As a first-time dangerous offender, the maximum sentence would be twenty-one years instead of the twenty-eight he received. We disagree with defendant's analysis.

The trial court properly sentenced defendant for a Class 2 felony with two prior felony convictions under A.R.S. § 13–604(D), which statute was specifically alleged in the indictment. Under the circumstances of this case, the sentencing option selected by the trial court made the jury finding of dangerousness mere surplusage insofar as this case is concerned. Thus, the principle enunciated in *State v. Superior Court,* 124 Ariz. 288, 603 P.2d 915 (1979), does not apply. That case holds that a trial court may not set aside a finding of dangerousness for the purposes of avoiding a mandatory sentence. Here, the charges and the jury findings permitted the trial court to sentence the defendant as a three-time felon which, for purposes of this case, rendered the finding of dangerousness superfluous. Although the finding of dangerousness had no impact on defendant's sentence in this case, we have considered his contention that the jury instructions on dangerousness were improper, since the finding could arguably affect any future sentence he may receive. *See* A.R.S. § 13–604(G). We find the instructions and special interrogatory on dangerousness accurate and adequate.

## WAS TRIAL COUNSEL INEFFECTIVE?

■ Defendant also claims that he was denied effective assistance of counsel at trial. To prevail, he must show that his trial counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced his defense. *State v. Nash,* 143 Ariz. 392, 694 P.2d 222, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). This court reviews counsel's performance considering the circumstances of the case as well as the prevailing professional norms in the community. *Id.* at 397, 694 P.2d at 227.

---

1. *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980); A.R.S. § 13–604(H).

56

Defendant's main complaint is that trial counsel did not introduce expert testimony to support his drug intoxication defense. Testimony at trial showed that defendant was consuming large quantities of cocaine and LSD at the time of these offenses. Defendant claims that an expert who could testify as to the effects of LSD was crucial to his defense.

■■■ Calling an expert witness is a matter of trial strategy, *State v. Rodriguez*, 126 Ariz. 28, 33, 612 P.2d 484, 489 (1980), and unless counsel's decision has no "reasonable basis," a reviewing court will not find ineffectiveness. *State v. Oppenheimer*, 138 Ariz. 120, 123, 673 P.2d 318, 321 (App.1983). Having reviewed the record, it is, at best, unclear to this court whether expert testimony would have assisted defendant in his defense. Voluntary intoxication may be considered by a jury only in determining the mental state of the defendant at the time of the alleged offense. A.R.S. § 13–503. In this case, very strong evidence supported the jury's conclusion that the defendant committed the offenses with which he was charged. Against the advice of his counsel, defendant chose to take the stand on his own behalf. During his examination and cross-examination, he claimed he had little memory of the offenses, but he also related in some detail the facts and circumstances of those offenses. He also testified that he contracted with the operators of the "chop shop" to procure specified vehicles in exchange for money and drugs. Finally, under cross-examination, defendant admitted that he intended to steal some of the vehicles. Based on the record before us, we do not find that trial counsel was ineffective in not calling an expert to testify as to the effects of LSD.

Defendant next complains that trial counsel was ineffective due to her alleged failure to request more specific instructions on the issue of dangerousness. As we have already noted, the instructions on dangerousness were adequate. Thus, no claim of ineffectiveness on that ground need be considered because there was no prejudice.

■■■ Defendant also complains of a number of instances in which his counsel's examination of witnesses elicited testimony which was allegedly helpful to the prosecution. The state correctly points out that a number of the instances complained of were instances where the prosecution, not the defense, was examining the witness. Other complained-of testimony resulted from non-responsive answers to defense counsel's questions.

Any damaging evidence allegedly elicited by defense counsel pales into relative insignificance in comparison to the evidence provided by the defendant himself when he insisted on taking the stand against his counsel's advice. In addition to his own extremely damaging testimony, he was thoroughly impeached by, among other things, nine prior felony convictions.

Lastly, while defendant admits that his counsel advised him not to testify, he claims that she failed "to advise the appellant about the rules of evidence so that inadmissible matters are admitted through appellant's ignorance." There is nothing in the record, however, which demonstrates that defense counsel did not advise, or attempt to advise, the defendant in this regard. He ignored her advice not to testify and, for all that appears in this record, he may also have chosen to tell his story in his own way, without regard to any advice he may have received.

Viewing the trial as a whole, defense counsel's performance was more than adequate. The evidence against defendant was very strong, and his own testimony, given against his counsel's advice, only added to the evidence against him. He has shown no specific conduct by his counsel which prejudiced him. Thus, we reject his claim that he was denied effective assistance of counsel.

### INDEPENDENT REVIEW OF THE RECORD

Pursuant to our obligations under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), and A.R.S. § 13–4035, we have reviewed the

entire record for fundamental error. We have found none, but have found one item which merits comment.

During jury deliberations, the trial judge received the following note from the jurors:

The crime of theft: definition of control, i.e.: physically driving car away or intent to steal and contributing to theft.

The trial judge returned this written response:

You have received all the instructions relevant to this case.

Unfortunately, the record does not affirmatively show that the judge discussed his response with counsel.

■ We note that the general rule in Arizona is that error occurs in a criminal case when a trial judge communicates with jurors after they have retired to deliberate unless the defendant and counsel have been notified and been given an opportunity to be present. *State v. McDaniel*, 136 Ariz. 188, 197, 665 P.2d 70, 79 (1983). For lack of an appropriate record on the point, we do not know whether such notification and opportunity were provided. However, we do know that the jury communication was wholly in writing and that the judge's response was in writing and added nothing

to the settled instructions which had been given.

■ Where it can be said, beyond a reasonable doubt, that there was no prejudice to the defendant, a communication between judge and jury outside the presence of defendant and counsel is harmless error. *State v. Mata*, 125 Ariz. 233, 241, 609 P.2d 48, 56, *cert. denied*, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980). Thus, even if the trial judge did not contact counsel and the defendant, no fundamental reversible error is presented.

## CONCLUSION

The sentences and convictions are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.