NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GILBERT ANTHONY MAINEZ, *Appellant.*

No. 1 CA-CR 16-0727
FILED 12-28-2017

Appeal from the Superior Court in Yavapai County
No. P1300CR201500617
The Honorable Jennifer B. Campbell, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

Craig Williams Attorney at Law, PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Patricia A. Orozco[1] joined.

---

**S W A N N**, Judge:

¶1          Gilbert Anthony Mainez appeals his convictions and sentences for attempted aggravated assault, aggravated assault, resisting arrest, and disorderly conduct.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          On an evening in March 2015, Mainez arrived at his parents' home in an agitated and intoxicated state.  After his father denied him entry, Mainez sat on a chair outside his parents' home, called 9-1-1, and reported he had a gun and would shoot any police officers who came to his parents' home.

¶3          When police officers arrived at the scene shortly thereafter, they saw Mainez seated in front of his parents' garage and ordered him to show his hands.  Rather than comply, Mainez yelled at the officers and walked toward his parents' front door.

¶4          At that point, the officers rushed toward Mainez and he turned and assumed a fighting stance.  Fearing for their safety, the officers attempted to physically restrain Mainez, but he repeatedly swung at them, and they struck back as they attempted to gain control.

¶5          Once the officers took Mainez into custody, they transported him to a nearby hospital so he could receive treatment for a substantial cut he sustained during the altercation.  As medical personnel closed his laceration, Mainez pulled surgical staples out of his head and threw them at the officers, threatened to beat and choke them, spat on them, and urinated on himself and shook his urinated pants at the officers.

---

[1]     The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶6 The state charged Mainez with three counts of aggravated assault, one count of resisting arrest, two counts of disorderly conduct, and one count of attempted aggravated assault. After an eight-day trial, the jury found Mainez guilty on all counts.[2] The superior court found Mainez had historical prior felony convictions and imposed sentences totaling 8.75 years in prison. Mainez timely appealed.

## DISCUSSION

I. DENIAL OF MAINEZ'S MOTION FOR MISTRIAL WAS WITHIN THE SUPERIOR COURT'S DISCRETION.

¶7 Mainez argues the superior court improperly denied his motion for mistrial. Specifically, he asserts the court should have declared a mistrial after the state failed to inform an officer victim that Mainez had requested an interview.

¶8 We review the superior court's denial of a motion for mistrial for prosecutorial misconduct for an abuse of discretion. *State v. Jones*, 197 Ariz. 290, 301, ¶ 20 (2000). Because "a declaration of a mistrial is the most dramatic remedy for trial error," it should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).

¶9 Three weeks before trial commenced, defense counsel emailed the prosecutor and requested an interview with each of the state's witnesses, "including the officers if they w[ould] consent to such a request." A week later, defense counsel sent a follow-up email asking whether the prosecutor had "a chance to ask the victim officers" whether they would consent to an interview. On the same day, a victim advocate contacted defense counsel to arrange an interview with Officer S.R., a named victim. A few days later, however, the prosecutor notified defense counsel that (1) Officer S.R. withdrew his consent to an interview, (2) the remaining officer victims likewise declined interviews, and (3) Officer M.B. no longer worked for the police department.

¶10 At trial, the state called Officer M.B. to testify. On direct examination, Officer M.B. testified that he worked for the police department on the day in question and responded to a report of an aggressive patient at a local hospital. When he arrived at the scene, Officer M.B. joined other officers who were watching Mainez as medical personnel

---

[2] Before the matter was submitted to the jury, one of the aggravated assault charges was reduced to attempted aggravated assault.

attempted to treat his injury. Mainez threatened the officers and moved aggressively toward one of them. To thwart a possible attack, Officer M.B. grabbed and restrained Mainez.

¶11 On cross-examination, defense counsel asked Officer M.B. whether the state had notified him that Mainez had requested an interview. Officer M.B. testified he did not recall an interview request in the case, but explained he could not be certain because he had received interview requests in multiple cases. When asked whether he would have consented to an interview if notified of such a request, Officer M.B. answered affirmatively. Defense counsel then questioned the officer extensively regarding two videos he recorded at the hospital.

¶12 When the superior court excused the jury for lunch, defense counsel moved for a mistrial based on the state's failure to convey Mainez's interview request to Officer M.B. The prosecutor responded that she did not inquire whether Officer M.B. would consent to an interview because "he was no longer a law enforcement officer," and explained her failure was an oversight, "not an intentional act."

¶13 On the next day of trial, after the parties had submitted written briefing, the court held a hearing on Mainez's motion. Defense counsel maintained the state had a mandatory duty to notify Officer M.B. of the interview request and asserted a showing of prejudice was therefore unnecessary. Nonetheless, defense counsel argued Mainez sustained prejudice because Officer M.B. was "the only officer who tape recorded any of the proceedings" and defense counsel would have thoroughly questioned his recording practices during a pretrial interview. In response, the prosecutor again argued that she "did not do anything intentionally" and "certainly did nothing to . . . block defense counsel's access to witnesses."

¶14 After hearing from the parties, the superior court denied the motion for mistrial. The court concluded that the prosecutor breached her duty to inform the victim of the request for a defense interview, but found the omission was inadvertent rather than intentional. To cure any possible resulting prejudice, the court ordered the prosecutor to immediately schedule a defense interview of Officer M.B., "based on his acquiescence . . . on the stand."

¶15 Although a victim is not compelled to submit to any interview, a defendant may request a victim interview "through the prosecutor's office." A.R.S. § 13-4433(A)–(B). Once a defendant submits

such a request, the "prosecutor's office shall promptly inform the victim." A.R.S. § 13-4433(B).

¶16        Relying on *State v. Rasch*, 188 Ariz. 309 (App. 1996), Mainez argues that a mistrial was the appropriate remedy for the prosecutor's statutory breach. In *Rasch*, the prosecutor failed to inform the victim of the defendant's request for an interview because the prosecutor assumed the victim would refuse. *Id*. at 310. At trial, however, the victim testified that she would have consented to an interview had the prosecutor notified her of the request. *Id.* On this basis, upon the defendant's motion, the court dismissed the case with prejudice. *Id.* On appeal, this court noted that the prosecutor's omission was "inadvertent rather than intentional," and modified the judgment to reflect dismissal *without* prejudice. *Id*. at 312. The state's appeal, however, did not consider whether a dismissal was proper in the first place, which is the core issue here. *Id*. at 312–13.

¶17        In fashioning a remedy in this case, the superior court addressed defense counsel's claim that she would have more thoroughly questioned Officer M.B. regarding his recording practices in a pretrial interview by ordering the prosecutor to immediately arrange a defense interview of the victim. The court could have reasonably concluded that allowing defense counsel additional time to interview Officer M.B. ameliorated any prejudice from the prosecutor's inadvertent statutory breach. Given defense counsel's extensive and thorough cross-examination of Officer M.B. at trial, and the interview's collateral scope, the court also could have reasonably concluded the prosecutor's breach was harmless. The superior court acted well within its discretion by denying Mainez's motion for mistrial.

II.        THE SUPERIOR COURT'S RESPONSE TO THE JURY DELIBERATION QUESTION WAS HARMLESS ERROR.

¶18        Mainez also contends that the superior court improperly responded to a jury question without notifying the parties.

¶19        Shortly after noon on August 3, 2016, the jurors retired to deliberate. After deliberating for approximately two and one-half hours, the jurors returned guilty verdicts on all counts. While deliberating, the jurors submitted a question to the court, "What is a hostile witness?" The superior court responded in writing, "The law given is in the instructions. Follow the instructions."

¶20        "The general rule in Arizona is that reversible error occurs when a trial judge communicates with jurors after they have retired to

deliberate unless the defendant and counsel have been notified and given an opportunity to be present." *State v. Dann*, 220 Ariz. 351, 368, ¶ 86 (2009). "Erroneous jury communications do not require reversal, however, if it can be said beyond a reasonable doubt that the defendant was not prejudiced by the communication." *Id.*

¶21 Here, the superior court erred by communicating with the jurors without notifying counsel. The error does not warrant reversal, however, because the court's written communication merely referred the jurors to the final instructions without "impart[ing] any erroneous information," and therefore caused no prejudice. *State v. Shumway*, 137 Ariz. 585, 588 (1983); *see also State v. Sammons*, 156 Ariz. 51, 57 (1988) (concluding superior court's ex parte communication that the jurors had "received all the instructions relevant to th[e] case" was harmless, specifically noting "that the judge's response was in writing and added nothing to the settled instructions which had been given").

## CONCLUSION

¶22 For the reasons set forth above, we affirm Mainez's convictions and sentences.

