NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JILL MARIE KNOX, *Petitioner*.

No. 1 CA-CR 25-0378 PRPC

FILED 05-21-2026

Petition for Review from the Superior Court in Yavapai County
No. V1300CR202080343
The Honorable Michael R. Bluff, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Yavapai County Attorney's Office, Prescott
By Glen M. Asay
*Counsel for Respondent*

C. Kenneth Ray, II, PC, Prescott
By C. Kenneth Ray, II
*Counsel for Petitioner*

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

**P A T O N**, Judge:

¶1 Petitioner Jill Marie Knox petitions for review from the superior court's order dismissing her petition for post-conviction relief ("PCR"). We grant review but deny relief.

### FACTS AND PROCEDURAL HISTORY

¶2 In February 2020, Knox drove her car into another vehicle, causing serious injuries to the other driver and the death of her young daughter. In July 2020, the State charged Knox with manslaughter, aggravated assault, criminal damage, and two counts of aggravated driving or actual physical control while under the influence with a passenger under 15 years of age.[1]

¶3 Knox hired private counsel ("Gordon") in April 2020, who represented her at a preliminary hearing in July 2020. Gordon did not present an expert at the preliminary hearing. He moved to withdraw around the end of the year, which the court granted in early 2021. The court appointed a public defender ("Gundacker") to represent Knox in April 2021.

¶4 Knox's trial took place in March 2022. A police officer testified he found prescription bottles, medical marijuana, and marijuana pipes in Knox's vehicle at the time of the incident, and that Knox told him she had consumed medical marijuana and taken prescription medications — including a muscle relaxer — earlier that day. Other witnesses testified to seeing Knox's car swerve multiple times — between lanes across the median line into oncoming traffic — before colliding head-on with a vehicle traveling in the opposite direction.

¶5 The State disclosed a toxicology report showing Knox had carisoprodol, meprobamate, and tetrahydrocannabinol (commonly

---

[1] The court granted the State's motion to dismiss the second count of aggravated driving (count 5) prior to voir dire.

known as THC) in her blood at the time of the collision.  At the time the
State disclosed the report, the expert did not have access to equipment to
test for gabapentin.  The expert was later able to test for it, and produced a
second toxicology report showing gabapentin was present in Knox's
system at the time of the collision.  On the first day of trial, Knox moved to
preclude the State from mentioning gabapentin in its case-in-chief.  The
superior court denied the motion, and Knox did not request a continuance.

¶6            The State presented an expert witness who testified that these
specific drugs have depressant-like effects, can impair a person's ability to
drive, and the impact of the drugs when taken together would be "more
enhanced than if there was just one of those drugs alone."  During cross-
examination, Gundacker questioned the expert about the extent to which
these drugs affected Knox's ability to drive.

¶7            A jury convicted Knox on all four counts and the court
sentenced her to 13 years' imprisonment, with 31 days of presentence
incarceration credit.  Knox appealed and we affirmed her convictions and
sentences.  *State v. Knox*, No. 1 CA-CR 22-0185, 2022 WL 16984713, at *3
(Ariz. Ct. App. Nov. 17, 2022).

¶8            In March 2025, Knox timely filed for PCR, alleging ineffective
assistance of counsel ("IAC").  In August 2025, the superior court
summarily dismissed Knox's petition.  In September 2025, Knox petitioned
this court for review.

## DISCUSSION

¶9            We review a superior court's ruling on a PCR petition for an
abuse of discretion, which occurs if the "court makes an error of law or fails
to adequately investigate the facts necessary to support its decision."  *State
v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).  We will affirm the superior court's
decision "if it is legally correct for any reason."  *See State v. Roseberry*, 237
Ariz. 507, 508, ¶ 7 (2015).

¶10           Knox claims her first attorney, Gordon, provided IAC by
failing to retain a pharmacology expert for the preliminary hearing.  Knox
additionally contends that her second attorney, Gundacker, provided IAC
by failing to request a continuance after the State disclosed the gabapentin
test results, failing to retain a pharmacology expert for trial, and failing to
seek preclusion of the State's expert testimony regarding the effects of THC
and relevant prescription medication.  Knox relies heavily on a report from
an expert she retained after trial which states that, "neither [Knox]'s use of

gabapentin nor a syncope event associated with gabapentin contributed to her motor vehicle accident."

¶11          "To state a colorable claim of [IAC] a defendant must show both that the counsel's performance fell below objectively reasonable standards, and that this deficiency prejudiced the defendant." *State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Failure to satisfy either prong of the *Strickland* test is fatal to an [IAC] claim." *Id*. To establish a colorable claim of prejudice, a defendant must "show a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 568, ¶ 25 (quoting *Strickland*, 466 U.S. at 694). The State responds that the attorneys' decisions related to the expert were strategic, reasonable, and did not provide a colorable IAC claim.

I.      **The superior court did not abuse its discretion in finding Gordon did not provide ineffective assistance of counsel.**

¶12          Knox argues that the superior court abused its discretion by denying her petition without holding an evidentiary hearing and by relying on speculation rather than conducting a proper inquiry. Specifically, she contends the superior court failed to investigate whether Gordon's decision not to retain a forensic pharmacology expert was a tactical choice and whether such testimony could have influenced the verdict. According to Knox, the court's reasoning—that the absence of an affidavit in her petition showing when Gordon was hired or what information he had about her prescription drug history before the incident—proves nothing about his knowledge of her medical or drug history and required a factual investigation. She further argues that the decision not to hire a pharmacologist was neither tactical nor strategic, and the court's characterization of it as such rests on conjecture rather than evidence obtained through a hearing. Finally, Knox challenges the superior court's conclusion that expert testimony would have made no difference, arguing that this determination is speculative.

¶13          "[M]atters of trial strategy and tactics are committed to defense counsel's judgment and generally cannot serve as the basis for an IAC claim." *State v. Bigger*, 251 Ariz. 402, 408, ¶ 12 (2021) (citation omitted). But "tactical or strategic decisions by trial counsel are not incontrovertibly beyond a court's review." *Id*. "Calling an expert witness is a matter of trial strategy, and unless counsel's decision has no reasonable basis, a reviewing court will not find ineffectiveness." *State v. Sammons*, 156 Ariz. 51, 56, (1988) (citation omitted).

¶14        The superior court found that Gordon's decision not to present an expert at the preliminary hearing was a reasonable strategic decision, noting that privately retained attorneys often make early strategic judgments about hiring experts based on a client's financial resources and expert availability, and counsel had only about two weeks to prepare between receiving the probable cause statement and the hearing.

¶15        Here, Gordon's decision whether to hire an expert for the preliminary hearing was a matter of trial strategy and cannot support an IAC claim unless it lacked any reasonable basis. *Id.* Courts presume that counsel's decisions fall within the wide range of reasonable professional assistance and are strategic in nature. *See id.* Accordingly, the superior court did not need to hold an evidentiary hearing to determine whether this was a strategic decision because such decisions are presumed to be strategic absent evidence to the contrary, which Knox did not provide.

¶16        Further, as the superior court noted, the burden of proof at a preliminary hearing—probable cause—is much lower than the beyond-a-reasonable-doubt standard required for a conviction. *See Drury v. Burr*, 107 Ariz. 124, 125 (1971). Probable cause only requires the proof to be sufficient "to cause a person of ordinary caution or prudence [to] conscientiously entertain a reasonable suspicion that a public offense has been committed in which the accused participated." *Id.*

¶17        Even if Gordon had retained an expert for the preliminary hearing, there was ample evidence independent of the toxicology report to establish probable cause. Multiple witnesses observed Knox driving erratically before the crash. Police also discovered drug paraphernalia inside the vehicle, and Knox told police she used marijuana earlier that morning. Taken together, this evidence provides more than a reasonable basis to suspect that Knox was involved in the offenses alleged. Gordon's decision not to hire an expert was therefore reasonable under the circumstances.

## II.    The superior court did not abuse its discretion by finding Gundacker did not provide ineffective assistance of counsel.

¶18        Knox contends the superior court abused its discretion by rejecting her claim that Gundacker provided IAC because he failed to move to preclude the State's expert and neglected to challenge the State's expert's qualifications and conclusions. She asserts that such testimony could have contradicted or undermined the State's position, particularly regarding whether gabapentin or THC contributed to the accident. Knox further

argues Gundacker should have requested a continuance after the State introduced unexpected evidence about the presence of gabapentin in her blood. According to Knox, these omissions prejudiced her defense and could have affected the outcome, making the superior court's refusal to hold an evidentiary hearing to explore this evidence an abuse of discretion.

**¶19** The court concluded Gundacker's decision not to seek preclusion of the State's expert before trial was a strategic one, emphasizing that he nevertheless mounted a significant challenge to the expert's testimony at trial. And the record shows Gundacker did challenge the State's expert witness. During cross-examination, Gundacker questioned the expert about the effect the drugs would have had on Knox's ability to drive, which resulted in the expert admitting she could not determine the extent to which the drugs impacted Knox or her driving ability.

**¶20** Knox also argues that Gundacker provided IAC by not securing a trial continuance after receiving the late-disclosed gabapentin results. Specifically, Knox contends the superior court erred in relying on an email Gundacker sent to Knox's PCR counsel, stating that "it seem[ed] a foregone conclusion that a continuance would not be granted." In rejecting this argument, the superior court noted that this argument would carry more weight if gabapentin was the only drug found in Knox's system, but multiple other drugs were found. A decision whether to seek a continuance is one of trial strategy and cannot serve as the basis for an IAC claim. *See Bigger*, at 408, ¶ 12 (2021). Given the other circumstances, such as Knox's car swerving and her admission to marijuana and prescription drug use that morning, the decision not to seek a continuance did not lack any reasonable basis and did not create a colorable IAC claim.

**¶21** Even assuming both attorneys' performances fell below an objectively reasonable standard, Knox has not demonstrated the requisite prejudice—namely that the trial verdict would have been different. *See Bennett*, 213 Ariz. at 567, ¶ 21 ("Failure to satisfy either prong of the *Strickland* test is fatal to an [IAC] claim."). As the superior court noted, even assuming Knox's post-trial expert testified and the State's expert's testimony about THC and gabapentin was precluded, there was significant other evidence from which a jury could find she was impaired at the time of the collision. It was reasonable to conclude that the jury could have relied on the multiple eyewitness reports of erratic driving and the presence of carisoprodol and meprobamate in her blood to determine that Knox was driving while impaired. The superior court did not err in concluding that Knox failed to state a colorable IAC claim.

**CONCLUSION**

¶22       We grant review but deny relief.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR